UNITED STATES of America,
Appellee,

v.

Gonzalo VALDES, Appellant.

No. 158, Docket 32243.

United States Court of Appeals
Second Circuit.

Argued Nov. 6, 1968.

Decided Sept. 17, 1969.

**336**

John R. Wing, Douglas S. Liebhafsky, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Morris Markowitz, Brooklyn, N. Y., for appellant.

Before WATERMAN and FEINBERG, Circuit Judges, and LEVET, District Judge.*

WATERMAN, Circuit Judge:

Appellant Valdes appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York after a four day jury trial. The jury returned verdicts of guilty on three counts of a four count indictment. Appellant was found guilty on counts 1 and 2 in which he was charged with the unlawful selling of heroin on two different occasions in violation of 21 U.S.C. §§ 173, 174, and on count 4 in which he was charged with the unlawful receipt and concealment of marijuana in violation of 21 U.S.C. § 176 a. A verdict of not guilty was returned on count 3 in which he was charged with the unlawful receipt and concealment of cocaine in violation of 21 U.S.C. §§ 173, 174. He was sentenced to serve five years of imprisonment on counts 1 and 2 and two years of imprisonment on count 4, the sentences to be served concurrently.

On appeal appellant alleges that a number of prejudicial errors occurred at a suppression hearing and at trial. We find these claims of error to be either non-prejudicial or meritless.

The Government's evidence at trial consisted of the testimony of Federal Narcotics Agents Unkefer, Telb, O'Grady, and Wasser. Agent Unkefer testified that while he was working as an undercover agent he purchased from the appellant one half ounce of diluted heroin on two separate occasions, once on July 20 and again on August 1, 1967. Both purchases were made in appellant's apartment which he shared with his common-

---

* Of the Southern District of New York, sitting by designation.

law wife, Beverly Shelton. Unkefer also testified that on September 7, 1967 he telephoned Valdes and asked him whether he would be home that evening, and Valdes responded by inviting Unkefer to the apartment and mentioning that he had cocaine and marijuana there.

Later that same evening the above mentioned four agents went to the appellant's apartment. Agents Unkefer and Telb (another undercover agent) entered first. Some minutes later Agents O'Grady and Wassar knocked on the door, announcing themselves as "Federal Agents." Appellant immediately dashed toward an open window leading to a fire escape but Agent Telb successfully restrained him while Agent Unkefer unlocked the door and admitted O'Grady and Wasser. Appellant was placed under arrest, and in connection therewith his apartment was extensively searched and packages of cocaine and marijuana were found, according to the agents, in the living room-kitchen of the apartment.

Just before the jury trial commenced the defendant moved to suppress these packages of narcotics as having been seized in violation of the defendant's constitutional rights. At this hearing and at the trial that immediately followed the hearing there was a sharp dispute with reference to the conduct of the search. The testimony at the suppression hearing was summarized by the judge:

> The search, according to Valdes' lady friend, started with Valdes, moved from him to the living room-kitchen, and then to the two bedrooms where her two young children were asleep. Her testimony was that the search of the small apartment included a search through chests, tables and bureau drawers, lasting for three full hours. According to the agents, the living room-kitchen combination where Valdes was arrested was searched and a chest of drawers within the living room which yielded the marihuana was searched. The cocaine, the agents testified, was found near defendant's

feet while he was standing in the living room. A search of the rest of the apartment did not lead to the discovery of any other narcotics. The agents further testified that the total time involved in the search was at most, three quarters of an hour. 280 F.Supp. 172, 175 (SDNY 1968) (Motley, J.).

Appellant's defense at trial consisted of his own testimony, supported by that of Miss Shelton, that he had made a sale on July 20 to Unkefer but had been entrapped into making it, that he never made the August 1 sale, and that the packages of cocaine and marijuana found in the apartment on September 7–8 were not his.

In rebuttal, the Government recalled Agents Unkefer and Telb. Unkefer testified that before the first sale, on his first visit to the apartment, he had seen three kilos of marijuana in the appellant's possession, and both undercover agents testified to occasions when the appellant had boasted to each of them that he could supply large amounts of narcotics. Also undercover agent Telb testified that Valdes had said that he had dealt in narcotics for some fourteen years and had assisted in the smuggling of over 50 kilos of heroin into the United States.

Appellant's first set of objections is directed to a number of evidentiary rulings made at trial by the court below. First, appellant contends that statements he made immediately following his arrest were improperly admitted into evidence under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This claim is based upon the alleged failure of the arresting officers adequately to apprise appellant of his *Miranda* rights. Agents Unkefer and Telb testified at trial that the complete set of *Miranda* warnings were given to Valdes both at the apartment and later at the stationhouse. Appellant, however, claims that these warnings, if given, were not sufficient to warn him, for he is of Cuban origin, speaks Spanish, and thus is allegedly unable fully to understand

**338**

the English language. The groundlessness of this contention is evidenced by the fact that appellant, who had resided in the United States for five years and who had conducted all his business with the undercover agents in English, never had to call upon the interpreter present to translate any questions asked him in the 64-odd pages of trial transcript which cover his testimony at the trial.[1]

■ At trial Unkefer's testimony about the telephone call he placed on the evening of September 7 to Valdes's apartment was objected to by appellant's counsel on the ground that a proper foundation had not been laid to establish that Unkefer in fact spoke with appellant or that he knew that the answering voice was that of appellant. The Record refutes this contention. Prior to any testimony about this telephone conversation Unkefer testified that he had spoken with Valdes twice before on the telephone at the same telephone number, had talked with him three times in person and was able to recognize Valdes's voice. He also testified that on the night in question he asked the woman who answered the telephone to put Valdes on the line. Unkefer stated that a person whose voice he recognized as the voice of Valdes then talked with him. There was no error in admitting evidence of this telephone conversation. United States v. Glass, 277 F.2d 566, 568–569, (7 Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960).

■ In his defense testimony appellant stated that he had been beaten by the federal agents when he was seized in the apartment. This testimony was corroborated by the testimony of Miss Shelton. In rebuttal to this assertion the Government recalled Unkefer who denied the beating and introduced a photograph taken of Valdes at the stationhouse after his arrest which shows no evidence of the physical beating Valdes claimed he

suffered at the hands of the agents. The introduction of this photograph into evidence was objected to by appellant's counsel on the ground that the Government failed to show that the picture was a fair representation of Valdes at the time it was claimed to have been taken. However, Unkefer identified the picture as a photograph of the appellant taken in his presence on the night of the arrest, and Telb testified both that the picture was taken in his presence and that it was a fair representation of the appellant as he appeared at that time. Unkefer's testimony that appellant had not been beaten was admissible in rebuttal, see Wigmore, Evidence § 1873 (3d ed.), and the photograph supporting Unkefer's testimony was admissible in the discretion of the trial court, see Wigmore, *supra*, §§ 790, 792–794.

■ In her instructions to the jury the trial judge stated that "[t]he defendant asserts a defense to the charge that he was the victim of entrapment by the agent of the Government, that is, the charges made in counts one and two of the indictment." This was error. Appellant had raised entrapment as a defense only to the charge in count 1; it was his testimony that the sale of heroin charged in count 2 never occurred. The error, however, under the circumstances here, was not reversible error. Appellant's counsel made only a general objection to this portion of the charge. When asked to elaborate his objection he responded: "I just felt it was prejudicial to my client's position." Rule 30 of the Federal Rules of Criminal Procedure provides that "No party may assign as error any portion of the charge * * * unless he objects thereto * * *, stating distinctly * * * the grounds of his objection." Had appellant's counsel complied with this requirement the judge could have easily corrected her inadvertent mistake. Not having done so, ap-

---

1. It is true that appellant did lapse several times into speaking Spanish in reply to questions asked of him at the trial, but this in no way indicates a lack of comprehension of the English language when spoken to him.

pellant is precluded from raising this issue for the first time on appeal. Fed.R. Crim.P. 30. Moreover, both the defense witnesses' testimony and the defense counsel's summation to the jury focused for the jury the separate defenses raised to count 1 and to count 2. Therefore, no substantial rights of the accused were prejudiced by the charge, and we hold that the factual error the court committed would not justify a reversal of the conviction on count 2, the count charging the August 1 sale, under our power pursuant to Fed.R.Crim.P. 52(a).

The jury was also instructed in a supplemental charge that the Government's rebuttal evidence introduced in order to demonstrate Valdes's propensity to deal in narcotics was to be considered only on the issue raised by the entrapment defense and not as independent proof of the events charged in the indictment. Appellant's objection to this instruction is without substance; the charge was given for the appellant's protection. See United States v. Morrison, 348 F.2d 1003, 1005 (2 Cir.), cert. denied, 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158 (1965). Anyway, appellant would be precluded from objecting to this portion of the charge on appeal, for his counsel specified his grounds only after the jury had retired and failed to specify any grounds for his objection to this instruction during an extensive discussion of the charge in the robing room. Fed.R. Crim.P. 30.[2]

The jury found appellant guilty of possessing marijuana on the evening when the agents searched the apartment and not guilty of the charge of then possessing cocaine, even though essentially the same proof was offered as to both counts. The established law is that in-

consistent verdicts, as these verdicts are claimed to be, do not warrant reversal. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1931); United States v. Andreadis, 366 F.2d 423, 435 (2 Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967).

The final claim advanced by appellant is that the court below erroneously allowed into evidence against him cocaine and marijuana seized in the apartment as a result of a search and seizure appellant maintained to the district court and maintains to us was violative of the Fourth Amendment. The Government's position, sustained by the court below after an evidentiary hearing, is that these narcotics so admitted into evidence were seized during a search conducted incident to a lawful arrest.

The seized evidence was offered to prove the alleged violations of law charged in counts 3 and 4 which set forth the unlawful receipt and concealment by appellant of cocaine and marijuana. As the jury found appellant not guilty on count 3 (the cocaine count) the alleged error only affected the jury's determination on count 4 unless there were prejudicial effects from this evidence that flowed over and tainted the jury's determination of guilty on counts 1 and 2, which charged sales of heroin occurring from one month to two months prior to the alleged violations charged in counts 3 and 4 for possessing cocaine and marijuana. The crimes charged in counts 1 and 2, sales, are substantially distinct from those crimes charged in count 3 and 4, possession, and the acts which constitute the charged crimes in counts 1 and 2 were much earlier in time and were in no way connected to those charged in counts 3 and 4. Consequently,

---

2. Valdes complains also of the court's instructions with regard to the defendant's attempt to flee. Those instructions were proper. E. g., United States v. Accardi, 342 F.2d 697, 700 (2 Cir. 1965); United States v. Heitner, 149 F.2d 105, 107 (2 Cir.), cert. denied sub nom. Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432 (1945). Valdes's sugges-

tion to us that the court should have charged that innocent people sometimes flee should have been addressed to the district court in the first instance rather than to this court. Fed.R.Crim.P. 30. See United States v. Re, 336 F.2d 306, 316 (2 Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964).

it is unreasonable to assume that the introduction into evidence of the drugs taken from appellant's apartment affected the result the jury reached on counts 1 and 2.

■ As mentioned above, the challenged search was conducted on September 7, 1967, and both the hearing to suppress the drugs seized and the trial in the district court were concluded months before the decision of the United States Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) which has now set limits to the permissible extent of rummaging searches in connection with arrests. However, the detailed search the agents conducted of appellant's whole apartment and the seizure of the evidence obtained through the search was not constitutionally impermissible under the then governing law. We agree with Judge Motley's holding at the pretrial suppression hearing below, United States v. Valdes, 280 F.Supp. 172 (SDNY 1968).[3] Under the doctrine pronounced in Chimel v. California it may well be that the seizure of the marijuana found in the chest of drawers in the apartment's living room would have been an impermissible seizure. Indeed, *Chimel* overruled two cases upon which Judge Motley relied: United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Whether the new doctrine announced in *Chimel* has retroactive application and, if so, to what extent, has not yet been decided by the Supreme Court. However, a division of this court has recently held that the doctrine of *Chimel* should not be retroactively applied and has denied retroactive application. United States v. Bennett et al., on petition for rehearing of Thomas, decided September 9, 1969,

415 F.2d 1113. Therefore we uphold the conviction on count 4.

Other issues raised by the appellant do not merit discussion.

We affirm the judgment of the district court.

---

3. Although, as we have stated, there is little doubt that before *Chimel* the introduction into evidence of the narcotics so seized was not a violation of the defendant's constitutional right to be secure from unreasonable searches of his dwell-

ing, there has been prior criticism of night-time intrusions by a force of officers into the privacy of the home. See, e. g., DiBella v. United States, 284 F.2d 897, 907–909 (2 Cir. 1960) (dissenting opinion of Waterman, J.).