**UNITED STATES of America,**

v.

**Thomas WILLIAMS, Harold Adler and Steven Schacht, Defendants.**

**No. 70 Cr. 649.**

United States District Court,
S. D. New York.

March 25, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., by John H. Gross, Asst. U. S. Atty., New York City, for United States.

Richard J. Leahy, Yonkers, N. Y., for Harold Adler.

Slotnick & Narral by Barry Ivan Slotnick, New York City, for Steven Schacht.

CANNELLA, District Judge.

This court determined on December 8, 1970 that a hearing would be necessary before the motions to suppress evidence made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure by defendants Adler and Schacht[1] could be decided. The hearing was held on February 4, 1971 at which time it was stipulated that defendants Schacht and Adler were arrested without a warrant on June 10, 1969 in apartment C at 26 Thompson Street in Manhattan and that thereafter on the same date federal narcotics agents entered apartment C2 at 129 East 4th Street in Manhattan without a warrant.[2]

At the hearing, agent Anthony Senneca testified that an agent Frank Miller, working as an undercover agent, had become acquainted during the spring of 1969 with defendant Williams, whose activities were being investigated. Agent Senneca further testified that he was "on surveillance" at 129 East 4th Street and that he saw defendant Williams enter these premises at 1:45 p.m. on June 10, 1969 and then leave at approximately 3 p.m. Agent Senneca followed defendant Williams to 26 Thompson Street. Agent Miller entered these premises at approximately 3:30 p.m. and came out about five minutes later. He met with agent Senneca and showed him samples of suspected "THC" and mescaline which he stated were given to him by defendant Williams. Agent Miller repeated his entry and exit of the building at 26 Thompson Street at about 8:15 p.m. on June 10th, this time showing agent Senneca a sample of suspected LSD which he apparently had also obtained from de-

fendant Williams. An hour or so later, agent Senneca received a radio call from agents on duty at 129 East 4th Street that defendants Adler and Schacht left the building there with a brown attache case and entered a taxicab bearing a given number. Agent Senneca testified that this taxi arrived at Thompson Street shortly thereafter, that he then followed the two defendants, one of whom was carrying a brown attache case, into the building at 26 Thompson Street and that he observed them knocking on the door of defendant Williams's apartment. The verbatim testimony of agent Senneca from this point in time reads as follows:

Q What if anything happened after that?

A Approximately 10 o'clock, 10 p. m., Agent Miller exited 26 Thompson Street and met with me. At this time he told me that Williams had shown him the LSD and that Adler and Schacht had brought the LSD into Williams' apartment.

We immediately went back to Williams' apartment, meaning Agent Miller, myself and several agents and Agent Miller knocked at the door to Williams' apartment. A voice from inside said who is it. Agent Miller said Frank. The door was opened by Williams and we immediately placed him under arrest.

We went into the bedroom of the apartment where Adler and Schacht were and arrested them, and at the same time I observed a brown attache case laying on the bed in an open position containing a quantity of LSD which was seized by Agent Weinkauff.

Q What did you do next?

A Shortly after that I left 26 Thompson Street with several other

---

1. Counts 4, 5 and 6 of the indictment charge these two defendants with possession of lysergic acid diethylamide (LSD) and phencyclidine hydrochloride (pcp) on or about June 10, 1969 in violation of 21 U.S.C. §§ 331(q), 360a.

2. See Hearing Minutes, p. 3. Defendant Schacht testified that he was the lessee of the latter apartment on June 10th and that defendant Adler was living there with him. See id., p. 21. Defendant Williams was apparently in possession of apartment C at the time.

agents and proceeded to 129 East 4th Street, where I met with Agent Handoga, who was in the hallway on the third floor of that building, and Agent Handoga informed me that no one had exited or entered apartment C2 since Adler and Schacht had left.

At this time I knocked on the door to apartment C2. The door was opened by Libby Rosenstein. I identified myself as a federal agent at this time, she yelled out, no, no, and began to run into the apartment and in the bedroom of the apartment I caught up with her and arrested her. At the time I arrested her she was standing in front of a closet, the door to which was open, and in open view on the floor of that closet was a quantity of LSD, which I seized.[3]

The evidence at issue in this case, in order to be admissible, must be the product of searches incident to lawful arrests since the agents did not have search warrants. And the lawfulness of the arrests without warrants must be based in turn upon probable cause which exists where the facts and circumstances within the agents' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution

in the belief that an offense has been or is being committed.[4] Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963). See also Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

The court finds what the hearing conclusively showed, namely, that there was probable cause for the agents to arrest the three defendants in apartment C at approximately 10 p.m. on June 10, 1969 and that their arrests without warrants were therefore lawful. Agent Miller, for example, had been a guest in the apartment on three, if not four, separate occasions on that date including immediately prior to the arrests, and while he did not testify at the hearing, the strong inference is that his physical presence in apartment C made him an eyewitness to the commission of the alleged crime(s). The court further finds that the search(es) incident to these lawful arrests in apartment C were not unreasonable. Even if the standard of constitutionality of these searches were as set forth in Chimel v. California,[5] 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969), there is nothing in the record tending to show that the searches in apartment C extended beyond the persons of the defendants and the areas

---

3. Hearing Minutes, pp. 12–14. The agents had earlier determined that defendants Adler and Schacht occupied apartment C2 and that a female companion had remained in the apartment after the two defendants departed during the evening of June 10th.

4. Section 7607 of Title 26, U.S.C. authorizes federal narcotics agents to make arrests without warrants where they have "reasonable grounds to believe that the person to be arrested has committed or is committing" a violation of the drug laws. The Supreme Court denied a petition for a writ of certiorari apparently based on a challenge to the constitutionality of this section. See United States v. Jamison, 395 F.2d 716 (2d Cir. 1968), cert. denied, June 23, 1969, 395 U.S. 986, 89 S.Ct. 213, 23 L.Ed.2d 774, and the dissenting opinion of Justice White (and Justice Black) handed down the same day in Chimel v. California, 395 U.S. 752, 770, 778, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1969). Cf. Draper v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

5. This standard does not actually apply to the case at bar since Chimel has not been given retroactive effect in this Second Circuit. See United States v. Masiello, 434 F.2d 33 (1970); United States v. Oliva, 432 F.2d 130 (1970); United States v. Pino, 431 F.2d 1043 (1970); United States v. Lozaw, 427 F.2d 911 (1970); United States v. Mazzochi, 424 F.2d 49 (1970); United States v. Valdes, 417 F.2d 335 (1969), cert. denied, 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970); United States v. Bennett, 415 F.2d 1113 (1969). Cf. Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969); Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969); Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

within their immediate control at the moment of arrest. Those parts of the defendants' motions which are directed at suppressing the evidence obtained as a result of these searches are therefore hereby denied.

■ While the constitutionality of the search(es) and seizure(s) in apartment C is sustained by the arrests of the defendants therein, those arrests cannot sustain the subsequent search and seizure in apartment C2.[6] See, e.g., Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). The Supreme Court has repeatedly stated that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967); Mancusi v. DeForte, 392 U.S. 364, 370, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Wyman v. James, 400 U.S. 309, 317, 91 S. Ct. 381, 385, 27 L.Ed.2d 408, 413 (1971). Apartment C2 was not entered on June 10, 1969 pursuant to a valid search warrant, nor is there any showing of proper consent. Furthermore:

The officers were not responding to an emergency. United States v. Jeffers [342 U.S. 48], at 52 [72 S.Ct. 93, at 95, 96 L.Ed. 59]; McDonald v. United States [335 U.S. 451], at 454 [69 S.Ct. 191, at 192, 93 L.Ed. 153]. They were not in hot pursuit of a fleeing felon. Warden v. Hayden, 387 U.S. 294, 298–299 [87 S.Ct. 1642,

1645–1646, 18 L.Ed.2d 782]; Chapman v. United States, 365 U.S. 610, 615 [81 S.Ct. 776, 779, 5 L.Ed.2d 828]; Johnson v. United States, 333 U.S. 10, 15 [68 S.Ct. 367, 92 L.Ed. 436]. The goods ultimately seized were not in the process of destruction. Schmerber v. California, 384 U.S. 757, 770–771 [86 S.Ct. 1826, 1835–1836, 16 L. Ed.2d 908]; United States v. Jeffers, *supra*; McDonald v. United States, *supra*, at 455 [69 S.Ct. at 193]. Nor were they about to be removed from the jurisdiction.[7]

The government's reliance on the arrest of Miss Rosenstein as sustaining the constitutionality of the search in apartment C2 is unfounded. "[A]n arrest with or without a warrant must stand upon firmer ground than mere suspicion." Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963). The record presently before the court indicates that the agents knew Miss Rosenstein was associating with defendants Adler and Schacht on the day of their arrest, but little more. The court is not persuaded that the knowledge of this association (and whatever suspicions might have flowed therefrom) amounted to probable cause to arrest; Miss Rosenstein's arrest was therefore unlawful and the search incident thereto unreasonable.[8] Those parts of the defendant's motions directed at suppressing the evidence obtained in apartment C2 are therefore hereby granted.

So ordered.

6. There is no question but that defendant Schacht, as lessee and an occupant of that apartment, has standing to press his present motion with regard to this search. The court finds that defendant Adler was a co-occupant of apartment C2 at the time of the search and that he therefore also has standing to assert his right under the Fourth Amendment, which "protects people, not places," Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967), and which "does not shield only those who have title to the searched premises," Mancusi v. DeForte,

392 U.S. 364, 367, 88 S.Ct. 2120, 2123 (1968).

7. Vale v. Louisiana, 399 U.S. at 35, 90 S.Ct. at 1972.

8. The government's argument set forth on pages 10–11 of its brief is not supported by the record which leaves the distinct impression that the arrest of Miss Rosenstein was more an incident to the search than vice versa. To quote from Ker v. California, "an arrest may not be used merely as the pretext for a search without warrant." 374 U.S. 23, 42, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726 (1963).