■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RICHARD EASTERBROOK, Appellant.— Appeal by defendant from (1) a judgment of the Supreme Court, Queens County, rendered November 8, 1972, convicting

him of criminal possession of a dangerous drug in the fifth degree, upon his plea of guilty, and imposing sentence, and (2) an order of the same court dated September 22, 1972, which denied his motion to suppress evidence, without a hearing. Judgment and order affirmed. The evidence sought to be suppressed was seized pursuant to a warrant which authorized a search for narcotics of a particular apartment, the person of a named occupant of the apartment and " of any other person who may be found to have such property in his possession or under his control or to whom such property may have been delivered" (see Code Crim. Pro., § 797). In support of the motion to suppress, it was alleged that defendant and another were searched in the hallway of the building, immediately after leaving the apartment, by police officers who had not yet entered the apartment and, further, that the search of the apartment was conducted subsequent to the search and arrest of defendant. The issue presented is whether, in the light of the Fourth Amendment requirement for specificity of the subject to be searched, a warrant may properly authorize a search, not only of a particular premises and certain specified individuals, but also of any person who is present on the premises when the search takes place. It has generally been held that the requirement for specificity is satisfied if the individuals encompassed by the warrant are identified by physical nexus to the ongoing criminal event itself (*State* v. *De Simone,* 60 N. J. 319). Thus, the validity of a search conducted pursuant to such a warrant is dependent upon the facts of each case and, in particular, upon the issue of whether there is good reason to believe that anyone present at the specified premises is a participant in the criminal activity taking place at the scene. Pursuant to that rationale such searches have been upheld in *People* v. *Nicoletti* (60 Misc 2d 108) and *People* v. *Pugh* (69 Ill. App. Div. 2d 312), involving persons present in an apartment in which drugs were being used and sold; in *Samuel* v. *State* (222 So. 2d 3 [Fla. Sup. Ct.]), involving a gambling operation in a building; in *Johnson* v. *State* (440 S. W. 2d 308 [Tex. Crim. App.]), involving an apartment in which "pot" parties were being held; and in *State* v. *De Simone* (*supra*), involving an automobile used in connection with the sale of lottery slips. Conversely, such searches have been held to be invalid in *Crossland* v. *State* (266 P. 2d 649 [Okl. Crim. Ct. App.]), involving a cafe at which 25 to 30 persons were eating; in *Garrett* v. *State* (270 P. 2d 1101 [Okl. Crim. Ct. App.]), involving premises used as a filling station and beer tavern; and in *State* v. *Massie* (95 W. Va. 233), involving all persons present in a poolroom. The affidavit in support of this search warrant alleged that heroin was being used and sold in the apartment. In our opinion, it may be said that the criminal activity was of such a nature and the premises so limited that it was likely that everyone present was party to the offense. Under the circumstances, we are of the opinion that the search of one identified only by his physical nexus to the premises was valid in this case and that the police officers had reasonable cause to believe that defendant was one who might "have such property in his possession or under his control or to whom such property may have been delivered." We are further of the opinion that the search was not rendered invalid by virtue of the fact that it took place outside the apartment. A search conducted a few feet from the door of the premises of a person who had just emerged therefrom is sufficiently proximate to the described premises to fall within the purview of the warrant. We have considered and rejected defendant's contentions with respect to the sentence imposed. Hopkins, Acting P. J., Latham, Christ and Benjamin, JJ., concur; Shapiro, J., dissents and votes to reverse the

judgment and the order, to grant the motion to suppress and to dismiss the indictment, with the following memorandum: The issue here is the validity of a search of defendant in which heroin was found in his possession. The police officers "who were secreting themselves in the corridor, approached, stopped the defendant" (affidavit in support of the suppression motion) in the hallway outside the closed door of an apartment which he had just left and searched him. Finding heroin on his person, they then placed him under arrest. The officers had a search warrant which directed them to make an immediate search of the apartment "occupied by Joseph Cassese and of the person of Joseph Cassese and of any other person who may be found to have such property in his possession or under his control or to whom such property may have been delivered, for heroin and narcotic implements" [*sic*]. After they searched and arrested defendant, the officers gained entrance to the apartment by knocking on the door and entering it when the door was opened by a person inside. They took defendant into the apartment with them. Their search of the apartment resulted in their finding additional contraband. Defendant moved to suppress the heroin found on him by the police, on the grounds that the search of his person had not been authorized by the search warrant and that the police did not have probable cause to believe that he had committed any crime. Criminal Term denied his motion, saying, "the search warrant authorized the search of any person found at" the apartment and that "it is of no consequence that defendant had just stepped out of the doorway of that apartment when stopped and searched." The trouble with that statement is that it is just not in accord with the facts. While "A search warrant which directs a search of a designated or described place, premises or vehicle, may also direct a search of any person present thereat or therein" (CPL 690.15, subd. 2), the warrant here did not direct a search of everyone present in the premises but only of the person of Joseph Cassese. Hence, the warrant in this case did not permit the police to search defendant even if he were found in the premises proper, unless contraband were first found therein, for until that time they did not have *present* probable cause to arrest him for the crime of possession of contraband.* Both the Fourth Amendment to the Federal Constitution and section 12 of article I of the Constitution of our own State declare, in identical language, that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." It is well settled that these constitutional provisions, which are for security of person and property, should be liberally construed. In *Ker* v. *California* (374 U. S. 23, 32–33) Mr. Justice Clark, speaking for the court said: "Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be 'as of the very essence of constitutional liberty' the guaranty of which 'is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen. . . . ' *Gouled* v. *United States*, 255 U.S. 298, 304 (1921); cf. *Powell* v. *Alabama*, 287 U.S. 45, 65–68 (1932). While the language of the Amendment is 'general,' it 'forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was

---

* In this connection it must be remembered that even when successfully executing a search warrant, the police may not *arrest* anyone within the searched premises unless the person arrested may be deemed to have actual or constructive possession of contraband.

made. . . . ' *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that ' [t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.' *Ibid.*" This doctrine of liberal construction was recently reaffirmed in *Coolidge* v. *New Hampshire* (403 U. S. 443, 453–454), where Mr. Justice Stewart, speaking for the court, reaffirmed Mr. Justice Bradley's admonition in *Boyd* v. *United States* (116 U. S. 616, 635) as follows : " ' It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' " Justice Stewart went on to say (pp. 454–455) : " Thus the most basic constitutional rule in this area is that ' searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are ' jealously and carefully drawn,' and there must be ' a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' ' [T]he burden is on those seeking the exemption to show the need for it.' " (See, also, *Grau* v. *United States,* 287 U. S. 124, 128; *United States ex rel. McArthur* v. *Rundle,* 402 F. 2d 701.) Applying the foregoing doctrine of liberal interpretation to implement the guarantees of the Fourth Amendment, the Seventh Circuit Court of Appeals in *United States* v. *Hinton* (219 F. 2d 324) held invalid a search warrant for the search of an entire apartment house containing four apartments because the affidavit on which the warrant was based failed to identify the particular apartment or apartments in the building in which the claimed sales of narcotics had been made. The court said (p. 326) : " Federal courts have consistently held that the Fourth Amendment's requirement that a specific ' place ' be described when applied to dwellings refers to a single living unit (the residence of one person or family). \* \* \* The basic requirement is that the officers who are commanded to search be able from the ' particular ' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. \* \* \* We are not being overtechnical in this. We are merely insisting, as we must, that in issuing search warrants the requirements of the Fourth Amendment be met." Our own Court of Appeals, in *People* v. *Dumper* (28 N Y 2d 296), dealt with a case somewhat analogous to the one here under consideration. The search warrant there authorized the search of a " ' one story wood frame cottage with white sidewall, green roof ' ", etc., and a " ' cottage east of a main house ' ", etc. (p. 299). The court rejected as invalid a search, under the warrant, of an automobile which had just been driven into the driveway, saying (p. 299) : " Since a warrant must describe the premises to be searched, and this warrant did not include the automobile, which was not on the premises when the police came with the warrant but which was driven into the driveway while police were there, it did not justify search of the car (*People* v. *Rainey,* 14 N Y 2d 35). Both the Federal and State Constitutions require that a search warrant ' particularly describ[e] the place to be searched ' (U. S. Const.,

4th Amdt.; N. Y. Const. art. I, § 12). The scope of search has been carefully limited. A warrant to search a building has been held insufficient to justify search of a shed attached to the building, accessible through the apartment of another person. 'Probable cause must be shown in each instance' (*People* v. *Rainey, supra,* p. 37)." It may be argued that, since the warrant authorized the search of Joseph Cassese and his apartment, as well as "of any other person who may be found to have such property [heroin and narcotic implements] in his possession," it authorized the search of any person seen leaving the apartment. But, assuming *arguendo* the constitutional validity of such a provision, unless this language is read as applying only to persons found within the premises to be searched, the limiting requirements of the Fourth Amendment and of section 12 of article I of the State Constitution, that the warrant particularly describe the place to be searched and the property to be seized, become meaningless, because the officers holding the warrant are then free to lie in wait and seize and search any and all persons who have left the premises, even before they execute the search warrant, *on the chance that they may be found to have the described property in their possession.* But that such a mere possibility does not serve to provide probable cause to stop and search those exiting from an apartment is made clear in *Sibron* v. *New York* (392 U. S. 40, 62), where Chief Justice Warren for the court rejected the contention that a police officer had probable cause to believe that the appellant was in possession of narcotics because he had seen him conversing with a number of known addicts over a period of several hours. In *Sibron* the court noted that the officer had no information concerning the individual searched *at the time the search was made.* Said the Chief Justice (pp. 62–63): "The inference that persons who talk to narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. *Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin* [emphasis supplied]. It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. E.g., *Henry* v. *United States,* 361 U. S. 98 (1959); *Johnson* v. *United States,* 333 U. S. 10, 16–17 (1948)." (See, also, *United States* v. *Jones,* 308 F. 2d 26, 31; *United States* v. *Febre,* 425 F. 2d 107, 111; *United States* v. *Wilkes,* 451 F. 2d 938; *United States* v. *Williams,* 325 F. Supp. 1283; *United States* v. *Johnson,* 475 F. 2d 977, and cases cited; *United States* v. *Love,* 472 F. 2d 490; *United States* v. *Linnear,* 464 F. 2d 355; *State* v. *Cabigas,* 3 Wn. App. 740; *State* v. *Bradbury,* 109 N. H. 105.) Here, too, it is equally clear that the mere recent presence of defendant in the apartment to be searched under the warrant was not sufficient to support an intrusion by the police upon his personal privacy upon the theory that there was probable cause to believe that he was in possession of narcotics. He could have been a neighbor, a delivery man, a social guest or a friend. There was here no evidence of the commission of a crime, such as "flight" (*United States* v. *Soyka,* 394 F. 2d 443) or any other "furtive conduct" (Anno. 45 ALR 3d 581) and the mere "suspicion" of the police was an insufficient predicate to warrant his being searched (*People* v. *Brown,* 32 N Y 2d 172; *People* v. *Corrado,* 22 N Y 2d 308; *Hall* v. *United States,* 459 F. 2d 831). In *Bivens* v. *Six Unknown Fed. Narcotics Agents* (403 U. S. 388, 394, n. 7) the Supreme Court of the United States indicated that the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant, citing Mr. Justice Stewart's concuring opinion in *Stanley* v. *Georgia* (394 U. S. 557, 571–572), wherein he said: "Even in the much-criticized case of *United States* v. *Rabinowitz,* 339 U. S. 56, the Court emphasized that

'exploratory searches . . . cannot be undertaken by officers with or without a warrant.' *Id.*, at 62. This record presents a bald violation of that basic constitutional rule. To condone what happened here is to invite a government official to use a seemingly precise and legal warrant only as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant." The majority of this court, by its affirmance in this case, is declaring that police armed with a search warrant for particularly described premises may lie in wait outside the premises to be searched in order to stop and search persons leaving them *before* actually executing the warrant and making the search called for therein. *In fact, if the holding of the majority be correct, the police need never have entered the premises at all.* By so holding, the majority is inviting the police, as was said by Mr. Justice Stewart in *Stanley* v. *Georgia* (*supra*, p. 572), "to use a seemingly precise and legal warrant * * * to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant" and then to make an arrest upon the basis of what they find by such illegal and unauthorized intrusion upon the person of the one searched. In my opinion, such a determination can only be arrived at upon the theory that the ends justify the means. I cannot subscribe to such a determination and hence vote to reverse the judgment appealed from and to dismiss the indictment.