**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Willie James JOHNSON, a/k/a, Slim, a/k/a, Ali, Defendant–Appellant.**

**Nos. 87CA1393, 89CA0030.**

Colorado Court of Appeals, Div. II.

Sept. 27, 1990.

Rehearing Denied Oct. 25, 1990.

Certiorari Denied March 11, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Douglas D. Barnes, Asst. Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Willie James Johnson, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to distribute a Schedule II controlled substance: cocaine. We affirm.

The eight-page affidavit for the search warrant recited the following facts. After having received numerous reports of drug trafficking at a specific residence in Colorado Springs, law enforcement authorities began surveillance. The officers' observations revealed extensive walk-in and drive-in traffic at that location. Persons who approached the house were generally met at the curb by a person who had emerged from the house. Following a brief conversation this person would enter the house and then quickly return to the visitor; after an exchange of "small objects hand to hand," the visitor would leave.

Officers noted that on all occasions at least two persons commonly associated with the house were positioned in the area of the sidewalk. The affidavit states: "These persons directly approached virtually everyone coming to the house, engaged them in conversation, then apparently either directed them to wait in a position away from the house or escorted the person directly to the front door."

Activities at the house included the purchase and delivery of drugs, "cooking" cocaine into "rock" form, overseeing the day-to-day operations of the business, and delivering cocaine to customers. Transactions within the house were generally conducted through a curtained slot in the bedroom door.

According to information received from confidential informants, the house was equipped with weapons (including two shotguns kept behind the front door) and a police scanner; additionally, the informants noted, someone was on watch for the police at all times. Undercover drug officers purchased cocaine on three occasions from street workers at the residence.

Police officers obtained a "no knock" search warrant for, among other things, "all persons found within or in the immediate vicinity of the residence." Defendant was not named specifically in either the search warrant or the affidavit.

The record of the suppression hearing indicates that, pursuant to this warrant, police conducted a raid on the house; defendant was among the first 15 people discovered inside. During a pat-down weapons frisk, a police officer discovered almost one thousand dollars concealed in defendant's left sock. Defendant was then handcuffed and transported to the police department.

## I.

Defendant first contends that he was illegally arrested via a general and invalid warrant and that, therefore, the trial court erred in failing to suppress the $995 which police found hidden in his sock. We disagree.

## A.

Initially, we must determine the propriety of the trial court's decision upholding the validity of the search warrant to ascertain whether the police officers were properly on the premises. In our view, under the circumstances of this case, the trial court's decision was correct.

 Facts and information which support a finding of probable cause need not rise to the level of certainty. *People v. Bustam*, 641 P.2d 968 (Colo.1982). A warrant is valid if it establishes sufficient facts to constitute a fair probability that contraband or evidence will be found in a particular place. *See People v. Pannebaker*, 714 P.2d 904 (Colo.1986).

In analyzing whether probable cause exists to support a search warrant, the totality of the circumstances must be considered. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Pannebaker, supra*.

 A proper warrant must establish the veracity and reliability of the informant and must disclose the basis of the informant's knowledge. *People v. Grady*, 755 P.2d 1211 (Colo.1988). Information provided as a result of the personal observations of an informant establishes an adequate basis of knowledge for that information. *People v. Rowerdink*, 756 P.2d 986 (Colo.

1988). The totality of the circumstances test places particular importance on the value of corroboration of the details of an informant's tip by independent police work. *Illinois v. Gates, supra; People v. Pannebaker, supra*.

 Here, the affidavit for the warrant establishes that police had received tips about drug sales activity at the residence from at least nine confidential sources. This information disclosed that cocaine or crack cocaine was being sold from the residence and that someone was "on watch" for the police at all times.

The affidavit also contained information obtained from experienced drug enforcement officers who had stated that the pattern of vehicular and pedestrian traffic in and around the house was consistent with street level narcotics trafficking. Several times undercover police officers purchased, at the residence, substances represented to be "crack"; the substances uniformly tested positive for cocaine.

The trial court found that the totality of these circumstances rendered the warrant valid, and we agree. The number of informants providing the same general information, coupled with the independent corroborative evidence obtained by police surveillance and controlled undercover purchases, demonstrates ample probability that contraband or material evidence of criminal activity would be found in the residence. *See People v. Rowerdink, supra*.

## B.

 Defendant contends, however, that the search of his person was invalid because it was unsupported by probable cause. He argues that the warrant, which directed that the search "specifically extend to all persons found to be within or in the immediate vicinity of the residence itself," was overbroad and, thus, unconstitutional. Given the facts of this case, we reject this contention.

Defendant relies on *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which prohibits the indiscriminate searching of all those present in a public

place during the execution of a search warrant for illegal drugs on the premises. We conclude that *Ybarra* is distinguishable.

In contrast to the situation here, the warrant in *Ybarra* authorized only the search of a tavern (a public place) and the bartender; it "did not itself authorize the search of Ybarra or of any other patron found on the premises.... Had the issuing judge intended that the warrant would or could authorize a search of every person found within the tavern, he would hardly have specifically authorized the search of [the bartender] alone."

Moreover, the court in *Ybarra* indicated that there is no inherent defect in "all persons" warrants if issued on sufficient grounds. It noted: "[W]e need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." Thus, the court specifically excluded situations such as the one here from its analysis.

A search warrant must particularly describe the place to be searched and the things to be seized. *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Consequently, "all persons" or "any persons" warrants have been challenged with some frequency as being violative of this Fourth Amendment requirement.

Although Colorado courts have not specifically addressed this issue, *see People v. Juarez*, 770 P.2d 1286 (Colo.1989), and *People v. Hughes*, 767 P.2d 1201 (Colo.1989), the majority of courts which have been confronted with these challenges have held that the sufficiency of such a warrant depends upon whether there is probable cause to believe persons present are involved in the criminal event. *See* 2 W. LaFave, *Search & Seizure* § 4.5(e) (1978).

In upholding such warrants, the courts have ruled that there must be a sufficient nexus among the criminal activity, the place of the activity, and the persons in the place to establish probable cause. *State v. Hinkel*, 365 N.W.2d 774 (Minn.1985). We

find the reasoning of those cases to be persuasive and, in adopting this analysis, hold that the warrant here was valid.

As explained by Chief Justice Weintraub in *State v. DeSimone*, 60 N.J. 319, 288 A.2d 849 (1972):

"On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

. . . . .

And, with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the ongoing criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny government a needed power to deal with crime, without advancing the interest the Amendment was meant to serve."

In *DeSimone, supra,* the warrant permitted officers to search a vehicle, which had been observed participating in a floating lottery "drop," and "all persons found therein." The nature of the precisely timed criminal activity, perpetrated in the confines of an automobile by a small, select band of participants, provided "ample basis for a well-grounded suspicion or belief that every person in a car at the time of the 'drop' would be involved in the illicit operation." Thus, the validity of the warrant was upheld.

Similar rulings, based on the same rationale, have been made in a number of jurisdictions. *See Samuel v. State,* 222 So.2d 3 (Fla.1969) (persons present in a building where a gambling operation was conducted); *Willis v. State,* 122 Ga.App. 455, 177 S.E.2d 487 (1970) (persons present in an apartment in which drugs were being sold and used); *People v. Pugh,* 69 Ill.App.2d 312, 217 N.E.2d 557 (1966) (persons present in a specified apartment where drugs were being sold and used); *Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101 (1976) (persons occupying apartment selling drugs to a "regular traffic of persons entering to make purchases"); *State v. Hinkel,* 365 N.W.2d 774 (Minn.1985) (persons present in a residence used as an "after hours joint"); *People v. Nicoletti,* 60 Misc.2d 108, 302 N.Y.S.2d 618 (1969) (persons present on the first floor of specified premises where a dice game was operated); and *State v. Frye,* 26 Wash.App. 276, 613 P.2d 152 (1980) (persons and vehicles found at residence where drugs were sold).

The rationale underlying all these decisions is best expressed in 2 W. LaFave, *Search & Seizure, supra* at 231:

"A search warrant authorization to search all persons found within a specifically described place is not lacking in particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies. Rather, the question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person. If the evidence tendered to the magistrate supports such a conclusion, then the search-all-persons-present warrant is unobjectionable. If the evidence does not support such a conclusion, then the searches of those present find no justification in the search warrant."

Those courts which have stricken down "all persons" warrants have done so because the requisite nexus was lacking. The scope of these warrants encompassed persons who might reasonably be engaged in lawful activity, usually in relatively public places; this overbreadth constituted a fatal defect. *See Peavy v. State,* 336 So.2d 199 (Ala.Cr.App.1976) (search warrant allowing search of "each and every person present in or near said mobile home" for drugs; *Wilson v. State,* 136 Ga.App. 70, 221 S.E.2d 62 (1975) (search warrant for public bar and "all persons on the premises"); *State v. Cochran,* 135 Ga.App. 47, 217 S.E.2d 181 (1975) (search warrant to search persons on premises "known as the Sunshine Club" for drugs); *State v. Sims,* 75 N.J. 337, 382 A.2d 638 (1978) (warrant authorizing search of service station and all persons found there); *State v. Riggins,* 138 N.J.Super. 497, 351 A.2d 406 (1976) (search warrant providing for search of tavern and "all persons present"); *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26 (1975) (search warrant for bar and restaurant plus "named person and any other person within" invalid as to unnamed persons, since "there was no support here for the inference that every occupant of the restaurant might be similarly engaged and hence in possession of the policy records sought in the warrant"); *Garrett v. State,* 270 P.2d 1101 (Okla.Crim.App.1954) (involving premises used as a filling station and beer tavern); *Crossland v. State,* 266 P.2d 649 (Okla.Crim.App.1954) (involving a cafe at which 20–30 persons were eating); *Lippert v. State,* 664 S.W.2d 712 (Tex.Crim.App.1984) (involving a visitor who had arrived at a house during execution of a search warrant).

Here, we agree with the trial court that the nexus necessary for a search of all persons found within the house has been amply demonstrated. The residence here was a private place with tightly controlled access through only one heavily guarded door. The extensive drug sale activity occurring there consisted of a sophisticated and tightly organized network of authorized personnel working in concert. To say that anyone who had gained entrance to that fortress-like structure could have been merely a casual visitor would strain credulity beyond the breaking point.

As the trial court found:

"[I]t's obviously a large scale business that was being conducted for the sale of illegal drugs. And without going through everything that's listed in the affidavit, it's obvious that the residence is well-described; the transactions are continuous, ongoing, and obvious to even the most unsophisticated observer that criminal activity is taking place."

Thus, unlike the situation in *Ybarra*, the police had more cause to search defendant, who was found inside the residence, than his "mere propinquity to others independently suspected of criminal activity." *See People v. Hughes, supra; see also People v. Juarez, supra.* Accordingly, since the search pursuant to the warrant was proper, the trial court was correct in refusing to suppress the money found in defendant's sock.

## II.

Defendant's other contentions relating to the propriety of the grand jury proceedings leading to his indictments have been resolved adversely to his arguments in *People v. Tyler*, 802 P.2d 1153 (Colo.App.1990), involving one of his co-defendants.

The judgment is affirmed.

SMITH and PLANK, JJ., concur.