## Richmond

TIMOTHY W. MORTON

v.

COMMONWEALTH OF VIRGINIA

No. 1217-92-2

Decided August 24, 1993

COUNSEL

Robert T. Butler, Office of the Public Defender, on brief, for appellant.

Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**MOON, C.J.**—Timothy W. Morton appeals his conviction of possession of cocaine in violation of Code § 18.2-250. Because we hold that probable cause existed to issue a warrant authorizing the search of Apartment 320 at 100 Princess Anne Street in the Hazel Hill Complex and all the persons present therein, we affirm.

On February 28, 1992, Officer Pennock of Fredericksburg stated under oath in a search warrant affidavit that a search was requested for 100 Princess Anne Street, in the Hazel Hill Complex, Apartment 320. The persons to be searched were Melonie Jones "and all other persons inside of said apt. [sic] at the time of execution of the warrant." The material facts constituting probable cause, as stated in the search warrant affidavit, were as follows:

> On Feb[ruary] 27, 1992 [Pennock] received information from a confidential reliable informant that he/she has witnessed crack cocaine inside 100 Princess Anne Street, apt. 320 within the past 48 hours. This informant has given information in the past that through investigation has proven reliable. In the past this same informant has given information that has led to the arrest of suspects. In the past two weeks the manager of the complex has had complaints about this same apt. in regards to the distribution of crack cocaine and prostitution. The manager has given information in the past which led to arrests of suspects involved in the drug trade. Many surveillances have been conducted by the Fredericksburg Narcotics Unit in the past sixty days . . . [and have] revealed several known and convicted drug users, and on two occasions persons being sought by police have sought refuge inside of said apartment.

At 6:45 p.m., the magistrate determined that the facts stated in the search warrant affidavit established probable cause and issued a search warrant authorizing the search for cocaine, and any other illegal drugs, money, records, and paraphernalia related to the possession and distribution of cocaine, at "100 Princess Anne Street, in the Hazel Hill Complex, Apartment 320," including all persons inside at the time of the execution.

At 8:20 p.m., Officer Pennock and Brent Taylor executed the search warrant on the above apartment, which was a small, two-bedroom town house apartment leased to Melonie Jones.

When Jones admitted the officers into the apartment, the officers observed Timothy Morton, appellant, at the top of the steps in close proximity to an adult male. Officer Taylor escorted the two men downstairs and detained them along with Jones and two other adults present in the house. A search of appellant's rear pants pocket revealed a Tylenol bottle containing cocaine residue, matches, a lighter, and a piece of wire.

Prior to trial, conceding that the search warrant affidavit established probable cause to search the premises, the appellant moved to suppress the items seized from his pants pocket. He argued that the "any persons present" language in the search warrant was unconstitutional for lack of specificity, that the facts stated in the search warrant affidavit were inadequate to establish probable cause for a search of all persons present, and that the affidavit was so deficient when the search was executed, that it could not be saved by the "good faith" exception to the exclusionary rule.

The trial court ruled that the information in the search warrant affidavit established probable cause to search the private residence, and that the totality of the facts, including the allegation that the apartment was a private residence and that drug trading was allegedly taking place in the apartment, justified the search of all persons present when the search warrant was executed.

Appellant was convicted after a bench trial of possession of cocaine in violation of Code § 18.2-250 and received a sentence of five years in the penitentiary with all but nine months suspended.

■ Although Virginia has not ruled on the validity of "all persons present" clauses in search warrants, many other jurisdictions have had the opportunity to do so and have upheld such search warrants. *See Minnesota v. Hinkel*, 365 N.W.2d 774 (1985); *Pennsylvania v. Graciani*, 554 A.2d 560 (Pa. Super. Ct. 1989); *Massachusetts v. Smith*, 348 N.E.2d 101, *cert. denied*, 429 U.S. 944 (1976); *Willis v. Georgia*, 177 S.E.2d 487 (Ga. Ct. App. 1970); *New Jersey v. De Simone*, 288 A.2d 849 (N.J. 1972); *People v. Easterbrook*, 350 N.Y.S.2d 442 (N.Y. App. Div. 1973), *aff'd*, 324 N.E.2d 367 (1974), *cert. denied*, 421 U.S. 965 (1975).

In *Graciani*, the affidavit stated that a confidential, reliable informant, who had been proven reliable in the past, informed police that within the past three days he had personally observed cocaine sales at the residence and that cocaine was being hidden in the house. The Court held that a nexus was established between the suspected distribution of cocaine, the private residence, and persons to be searched and justified a warrant to search the residence and "all persons present." 554 A.2d at 561-62. The Court explained that

[t]hough it is certainly possible, even probable, that innocent third parties who happen to be at the wrong place at the wrong time may be subjected to searches under such warrants, the nexus between the person to be searched and the nature and the seriousness of the criminal conduct suspected on probable cause, nonetheless, renders the probability of their culpable participation in the crime suspected sufficient to warrant a search of their person. . . .

*Id.* at 562-63.

In *De Simone*, speaking for a unanimous Court, Justice Weintraub stated:

On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store . . . obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

288 A.2d at 850.

The Superior Court of Pennsylvania used a *De Simone* analysis to uphold an "all persons present" warrant in which the accused was found to possess drugs while visiting the subject's apartment. *Pennsylvania v. Heidelberg*, 535 A.2d 611 (1987). The Court in *Heidelberg* stated as follows:

> We do not sanction the blind issuance of ''all persons present'' warrants and have scrutinized strictly the one under consideration. However, the facts contained in this affidavit include: 1) the observation of . . . cocaine available . . . at the residence within twenty-four hours of the issuance of the warrant; 2) observations by three informants of drug sales at the residence; 3) a private residence to be searched; and 4) contraband which can easily be hidden on the body. Given these facts, we uphold the magistrate's determination that probable cause existed to believe that anyone at the residence on the night in question would be involved in illegal drug-related activities.

*Id.* at 615.

In this case, the affidavit contained the following facts: (1) a reliable informant had seen crack cocaine inside the apartment within the past forty-eight hours; (2) the manager of the complex had received complaints of distribution of crack cocaine from this same apartment; (3) the apartment was a private residence; (4) surveillance within the past sixty days had revealed known and convicted drug users inside the apartment; and (5) the contraband could be easily hidden on the body.

(2) Based on the totality of the circumstances, we hold that probable cause existed to search all of the persons found inside the apartment when the warrant was executed. The facts in this case established a substantial ''nexus'' between the observation of cocaine in the apartment, the observation of the distribution of cocaine, the private nature of the apartment, and the easily concealable contraband sufficient to support an ''all persons present'' warrant.

> The standard which we apply in reviewing a magistrate's probable cause determination is whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed. . . . We are further mindful that a magistrate may draw reasonable inferences from the material supplied to him and that his determination of probable cause ''should be paid great deference by reviewing courts.'' ''A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.''

*Williams v. Commonwealth*, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987) (citations omitted).

In sum, we hold the information in the affidavit supported a finding of probable cause that those persons present in the private residence would be engaged in criminal activity. We give the magistrate's determination great deference. *Williams*, 4 Va. App. at 68, 354 S.E.2d at 87.

Having held that the warrant was issued upon probable cause, we need not decide whether the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984), would apply in this case.

Accordingly the trial court is affirmed.

*Affirmed.*

Fitzpatrick, J., concurred.

Benton, J., dissenting.

A detective of the Fredericksburg police department obtained a search warrant authorizing the search of an apartment, the lessee of the apartment, and "all other persons inside of said apartment at the time of execution of the warrant." To support the warrant application, the detective averred that:

On Feb. 27, 1992 this affiant received information from a confidential reliable informant that he/she has witnessed crack cocaine inside 100 Princess Anne Street, apt. 320 within the past 48 hours. This informant has given information in the past that through investigation has proven reliable. In the past this same informant has given information that has led to the arrest of suspects. In the past two weeks the manager of the complex has had complaints about this same apt. in regards to the distribution of crack cocaine and prostitution. The manager has given information in the past which led to arrests of suspects involved in the drug trade. Many [surveillances] have been conducted by the Fredericksburg Narcotics Unit in the past sixty days [and have] revealed several known and convicted drug users, and on two [occasions] persons being sought by police have sought safe refuge inside of said apartment.

When police officers entered the apartment at 8:20 p.m. to conduct the search, three adults, including the lessee of the apartment, and a few children were on the first floor of the apartment. Two adults, including Timothy W. Morton, were on the second floor. An officer searched Morton pursuant to the warrant and discovered in his pocket a Tylenol bottle that contained a powder residue. The record does not reveal whether the officers searched the other occupants, including the children, or whether drugs were found in the apartment. Laboratory tests revealed that the bottle taken from Morton's pocket contained cocaine residue. He was convicted of cocaine possession based on the evidence obtained by the police during the search. For the reasons that follow, I would hold that the trial judge erred in refusing to suppress the evidence seized from Morton.

The Constitution of Virginia explicitly prohibits general warrants:

> That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.

Va. Const. art. I, § 10. In view of the Virginia constitutional requirements for naming the person to be searched and particularly describing the offense charged to the named person, a warrant that empowers searches of unidentified persons who are described only by their potential relationship to the location to be searched is unconstitutional. Morton was neither named nor specifically described in the warrant. No averment of a material fact established probable cause to search Morton for drugs.

"Particularity being the *sine qua non* of a valid warrant, a general warrant is of course void." *State v. Cochran*, 135 Ga. App. 47, 48, 217 S.E.2d 181, 183 (1975). Any "all persons present clause" in a search warrant must be stricken as a general warrant repugnant to the constitution. *See, e.g., Johantgen v. Commonwealth*, 571 S.W.2d 110, 111-12 (Ky. Ct. App. 1978); *Peavy v. State*, 336 So. 2d 199, 202 (Ala. Crim. App.), *cert. denied*, 336 So. 2d 202 (Ala. 1976); *Crossland v. State*, 266 P.2d 649 (Okla. Crim. App. 1954).

The majority opinion eschews the plain language of the Virginia constitution and adopts in its stead an approach that requires an analysis of each warrant to determine whether the "all persons present" clause was justified. Even under this approach, which I believe to be

in derogation of rights protected by the Constitution of Virginia, the majority opinion's analysis is faulty.

Both the United States and the Virginia constitutions prohibit general search warrants. U.S. Const. amend IV; Va. Const. art. I, § 10. Over sixty years ago, the United States Supreme Court held that search warrants must be scrutinized because general searches are violative of the constitution. *Marron v. United States*, 275 U.S. 192, 195 (1927). Indeed, courts that have engaged in the type of analysis that the majority opinion undertakes, have only done so upon strict scrutiny of the supporting affidavit.

> [B]ecause the risk is great that an innocent person may be swept up in a search under a warrant that authorizes a search of all persons on the premises, the issuing magistrate should review the supporting affidavit for probable cause with strict scrutiny. The affidavit must indicate with particularity why probable cause exists for the search of those generally described.

*State v. Ingram*, 104 Or. App. 389, 399-400, 802 P.2d 656, 663 (1990), *rev'd on other grounds*, 831 P.2d 674 (Or. 1992). The failure to give the affidavit strict scrutiny invites the approval of warrants that are general in scope.

> [I]n the overwhelming majority of cases a search based exclusively on the somewhat vague sanction of the language in the "any person present" clause is a clear violation of the proscription against unreasonable searches. An affidavit in support of a warrant which seeks to authorize a search of "any person present" is to be strictly scrutinized. It can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot.

*Commonwealth v. Smith*, 370 Mass. 335, 344, 348 N.E.2d 101, 106-07, *cert. denied*, 429 U.S. 944 (1976).

When the facts presented in the warrant application do not provide a basis to conclude that every person on the premises possesses the items sought in the warrant, any warrant that allows the search of "all persons present" on the premises violates the constitutional prohibitions against general warrants.

"[T]he question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person." 2 Wayne R. LaFave, *Search & Seizure* § 4.5(e), at 231 (2d ed. 1987).

The affidavit that was given in support of the warrant application in this case does not suffice even under the standard the majority opinion now creates. The affidavit was not particular enough to support the necessary conclusion that it was probable that each person found at the apartment was involved in criminal conduct so as to have evidence on or about his or her person. The facts in the affidavit contain probable cause to justify issuance of a warrant to search the house for cocaine. "The facts in the affidavit are simply insufficient [, however,] to infer that the sole or primary activity at the residence was the sale of drugs and that everyone present would be involved in illegal activity." *State v. Horn*, 15 Kan. App. 2d 365, 367, 808 P.2d 438, 440 (1991). Thus, the facts presented in the affidavit were insufficient to authorize a warrant to search all persons present. An allegation that drugs were seen in a residence does not suffice to establish a nexus between the alleged criminal activity and all persons present at the residence. *See Peavy*, 336 So. 2d at 202.

The informant's allegation is the only material fact concerning the presence of cocaine in the residence. However, the informant, who was in the apartment, did not state that drugs were sold in the apartment. The informant did not report that persons other than the informant and the lessee of the apartment were present on the premises when the cocaine was seen. The informant also did not allege seeing crack cocaine on more than one occasion. Moreover, the affidavit does not mention Morton. The many surveillances that were said to have occurred over a sixty day period only "revealed several known or convicted drug users." The affidavit does not state whether those persons were entering the apartment, leaving the apartment, or simply in the neighborhood. The only reference to persons entering the apartment was that "on two occasions persons being sought by police have sought safe refuge inside of said apartment." The affidavit does not state that those persons were users or distributors of drugs. The affidavit also does not state whether those persons were residents of the apartment.

The only indication of any distribution of cocaine is found in a reference to unspecified "complaints" that the manager of the apartment complex had received. The statement in the affidavit that "the manager of the complex has had complaints about this same [apartment] in regards to the distribution of crack cocaine" also does not state that drugs were sold or distributed in the apartment. Moreover, the reference to the complaints is merely a conclusion that does not suffice as an allegation of material fact that supports a probable cause determination. *See Wiles v. Commonwealth*, 209 Va. 282, 286, 163 S.E.2d 595, 598 (1968). The failure to allege that cocaine was being sold or distributed in the apartment causes the use of an "all persons present" search clause to run afoul of the prohibition against general warrants. Due to this failure to aver as a material fact the sale or distribution of drugs in the apartment, the police did not establish a nexus between the searching of all persons present and any ongoing criminal activity. Citizens may visit the residence of a person suspected of being a drug user for a variety of valid reasons. It does not suffice for constitutional purposes to conclude that a person's mere presence in the residence of another person who the police believe to be a criminal agent provides a sufficient nexus to support a search of the visitor.

> Under proper circumstances the police may search a nonresident visitor or his belongings in the course of executing a warrant for a premises search. These circumstances include: where the individual consents to being searched, where the item is in plain view on the person or in his possession, where there has been a valid arrest and where there is probable cause to search plus exigent circumstances. A search may also be conducted under the *Terry* exception, which allows a stop and frisk where there is a reasonable belief that the person is armed and dangerous.

*State v. Lambert*, 238 Kan. 444, 449, 710 P.2d 693, 698 (1985). "[M]ere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause" to search a person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

In each of the cases from other jurisdictions that the majority relies upon, the affidavit contained a specific and detailed allegation that cocaine sales had been observed in great frequency in the place to be searched. In *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972), the case that provides the analytical framework upon which the majority opinion relies, the New Jersey court distinguished the case before it, a

search of all persons present in an automobile, from the search of a residence:

> And, of course, in this connection an automobile is different from a dwelling. To begin with, the power to search must be equal to the distinctive threat of this mobile instrumentality of crime. Further, presence in an automobile is more apt to suggest complicity in the illegal use to which the car is then being put than would be presence in a building in which some illegality may be occurring. While some innocent person could happen to call upon the occupant of such real property, it is unlikely that a driver of a car pursuing a criminal venture would take with him someone not involved who could be a witness against him. It would be surprising if a passenger just happened to be in an automobile en route to commit a holdup. Conceivably that could be, but probable cause is not dissipated by some distant possibility. We repeat that the question is not whether the circumstances would be enough to take a case against the passenger to the jury; we are speaking only of a basis for a search.

*Id.* at 322, 288 A.2d at 851 (citation omitted). Moreover, the court scrutinized the warrant application and stated that "[o]n principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts." *Id.* at 321, 288 A.2d at 850.

In *Commonwealth v. Heidelberg*, 369 Pa. Super. 398, 535 A.2d 611 (1987), *aff'd*, 560 A.2d 140 (1989), the affidavit set forth material facts that evidenced a distribution of drugs in the residence to be searched, including the assertion that the informant "observed James Heidelberg selling cocaine 'to other persons at [the] house' [and] observed 'a large quantity of cocaine' for sale at the residence in James Heidelberg's possession." *Id.* at 400, 535 A.2d at 611. Scrutinizing the application, the court stated:

> Here, the premises to be searched were not open to the public. Moreover, a confidential and reliable informant had actually observed the owner selling cocaine to *other persons at the house*. Additional informants corroborated that the owner was "dealing" controlled substances from the house and consequently must have observed drug sales to third parties on the premises. Most important, however, is the fact that within twenty-four hours of issuance of the warrant, a "large quantity of cocaine"

had been observed in the house and was available for sale. Under these circumstances, it is unlikely that the owner would entertain in his home anyone other than those engaged in illegal drug trafficking.

Under the *De Simone* analysis, it is therefore clear that the search warrant was properly issued. We do not sanction the blind issuance of "all persons present" warrants and have scrutinized strictly the one under consideration. However, the facts contained in this affidavit include: 1) the observation of a significant amount of cocaine available for sale at the residence within twenty-four hours of the issuance of the warrant; 2) observations by three informants of drug sales at the residence; 3) a private residence to be searched; and 4) contraband which can easily be hidden on the body.

*Id.* at 406-07, 535 A.2d at 615. *See also Commonwealth v. Graciani*, 381 Pa. Super. 626, 544 A.2d 560 (1989) (affidavit alleged that cocaine sales were occurring in a residence where previous arrest had been made for the sale of cocaine and that purchasers would secret the cocaine on their persons before leaving the residence); *State v. Hinkel*, 365 N.W.2d 774 (Minn. 1985) (affidavit alleged that residence was an "after hours joint" in which informant saw illegal alcohol being sold and gambling occurring late at night with unusual activity); *People v. Esterbrook*, 43 App. Div. 2d 719, 720, 350 N.Y.S.2d 442, 443 (1973) (affidavit established that drugs were used and sold in the apartment and that criminal activity was of such a nature that everyone present was engaged in the use and sale of drugs); *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972) (affidavit alleged that police observed an illegal lottery scheme that used a parked, unattended automobile as a floating rendezvous place for other persons to come and "drop" illegal deposits); *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101 (1976) (occupants of the apartment were selling drugs to a "regular traffic of persons entering to make purchases"); *Willis v. State*, 122 Ga. App. 455, 177 S.E.2d 487 (1970) (drugs were being sold in an apartment and drugs were being used in the apartment by persons frequenting the apartment).

Typically, when courts have authorized searches conducted under "all persons present" clauses, "the nexus necessary for a search of all persons found within the house has been amply demonstrated." *People v. Johnson*, 805 P.2d 1156, 1161 (Colo. Ct. App. 1990). In giving the warrant affidavit strict scrutiny, the *Johnson* court stated:

The residence here was a private place with tightly controlled access through only one heavily guarded door. The extensive drug sale activity occurring there consisted of a sophisticated and tightly organized network of authorized personnel working in concert. To say that anyone who had gained entrance to that fortress-like structure could have been merely a casual visitor would strain credulity beyond the breaking point.

As the trial court found:

"[It's obviously a large scale business that was being conducted for the sale of illegal drugs. And without going through everything that's listed in the affidavit, it's obvious that the residence is well-described; the transactions are continuous, ongoing, and obvious to even the most unsophisticated observer that criminal activity is taking place."

*Id.*

The affidavit made in support of the search warrant in this case does not survive this kind of strict scrutiny. The search warrant authorized a general search of persons present in an apartment where some cocaine had been seen. The authorization to search "all persons present" under that circumstance was given without a nexus to the type of criminal activity established by material facts.