**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Stacey A. COVINGTON, Defendant and Appellant.**

**No. 940716–CA.**

Court of Appeals of Utah.

Sept. 28, 1995.

Shelden R. Carter, Carter, Phillips & Wilkinson, Provo, for Appellant.

Todd A. Utzinger, Asst. Atty. Gen. and Jan Graham, State Atty. Gen., Salt Lake City, for Appellee.

Before ORME, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Defendant Stacey A. Covington appeals from the trial court's denial of his motion to suppress evidence used to convict him of drug-related offenses. Having determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument," Utah R.App.P. 29(a)(3), we affirm.

---

## FACTS

On February 22, 1994, Rachel Anderson was arrested by officers of the Pleasant Grove Police Department. At the time of her arrest, officers discovered methamphetamine concealed in her clothing. Anderson later told one of the officers that she had stolen the drug from Rick Close, who had additional quantities of methamphetamine in bindles at his apartment, ready for sale. She said that Close had been supplying her with methamphetamine and that she had been smoking methamphetamine with him that day. She also stated that Close was living with Melissa Seamster and John Walker in the basement apartment of a house located at 479 South 100 East.

The officers were familiar with Mr. Close, who had a history of involvement with controlled substances. Prior to Anderson's arrest, the officers had received tips that Close had been selling methamphetamine and had searched Close's vehicle and found drug paraphernalia. Moreover, the officers were familiar with the house Anderson described, having arrested people residing in it.

Based upon this information, the officers obtained a search warrant. The warrant authorized them to search "[t]he downstairs apartment and the person of all individuals present at 479 South 100 East, Pleasant Grove" for "narcotics and other evidence of trafficking[,] including but not limited to cash, weapons, baggies, scales, buy-owe sheets and paraphernalia for the use, storage, sale or preparation of narcotics."

The officers arrived at Close's apartment to execute the warrant at 8:40 p.m. on February 22, 1994. The door leading to the apartment was located on the north side of a covered porch that protruded from the southeast corner of the rear of the house. A truck with its hood up was parked to the north of Close's door, approximately eight to ten feet away. Defendant stood between the truck and the door. The first officers to arrive at the door encountered defendant. One of them took custody of him, while the others proceeded into the apartment.

The officer who took custody of defendant ordered him to lie down on the ground, with his hands and legs spread. The officer then frisked defendant, and felt a hard, cylindrical object in his shirt pocket, as well as what he believed to be a cigarette package. The officer testified that the hard object "was small, like a pinky size, cylindrical in nature and had the curvature around the mouth piece and things of that nature that I felt indicated to me—or made me feel it was a marijuana pipe."

The officer did not immediately remove either object from defendant's shirt, but instead waited until the apartment had been secured. He then took defendant inside the apartment and stood him next to the other suspects. At that point, the officer searched defendant's person and removed a marijuana pipe and cigarette package from defendant's shirt pocket. Upon inspecting the cigarette package, which contained marijuana, the officer arrested defendant for possession of drug paraphernalia and possession of marijuana. At the Pleasant Grove Police Department, officers conducted an extensive search of defendant and found a small quantity of methamphetamine in the change pocket of his jeans. A larger quantity was also found near the truck where defendant had first been observed.

Defendant was charged with possession of a controlled substance (methamphetamine) in a drug-free zone, a second-degree felony, Utah Code Ann. § 58–37–8(1)(a)(iv) (1994); possession of a controlled substance (marijuana) in a drug-free zone, a class A misdemeanor, *id.* § 58–37–8(2)(a)(i); noncompliance with the illegal drug stamp tax act, a third-degree felony, *id.* § 59–19–103(1)(b); and possession of drug paraphernalia in a drug-free zone, a class A misdemeanor, *id.* § 58–37a–5(1).

Prior to trial, defendant moved to suppress the drugs and marijuana pipe. After an evidentiary hearing, the trial court denied the motion. Defendant then pled guilty to the first two charges, conditioned upon his right to appeal the trial court's denial of his motion to suppress. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988). Defendant now challenges the trial court's ruling as violative of the Fourth Amendment.

## "ALL PERSONS PRESENT" SEARCH WARRANT

 The Fourth Amendment to the United States Constitution directs that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As a general rule, therefore, "'open-ended' or 'general' warrants are constitutionally prohibited." *Ybarra v. Illinois*, 444 U.S. 85, 92 n. 4, 100 S.Ct. 338, 342 n. 4, 62 L.Ed.2d 238 (1979). Additionally, it is clear that a warrant to search designated premises does not authorize the search of every individual who happens to be on the premises. *Id.* "Because the standard of probable cause must be particularized to every person or place to be searched, a warrant authorizing the search of premises does not authorize officers to search an individual merely because that person is present on the premises." *State v. Ayala*, 762 P.2d 1107, 1111 (Utah App.1988), *cert. denied*, 773 P.2d 45 (Utah 1989).

The question remains whether a warrant that authorizes the search of unnamed persons present at a location is lawful if it is supported by probable cause to believe that all persons in the place at the time of the search will be involved in the criminal activity upon which the warrant issued. This issue is one of first impression in Utah.

The majority of courts that have addressed the validity of "all persons present" search warrants have held that, depending on the evidence supporting the probable cause for their issuance, they may pass constitutional muster.[1] In *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972), the New Jersey Supreme Court set forth the following rationale for upholding such a warrant:

On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

... [W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the ongoing criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment.

*Id.*, 288 A.2d at 850.

In *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101, *cert. denied*, 429 U.S.

---

1. In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Supreme Court addressed the question of whether the police could search a person based on his presence at a tavern they had a warrant to search. Without considering "situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs," *id.* at 92 n. 4, 100 S.Ct. at 343 n. 4, the Court concluded that probable cause did not exist under the supporting affidavit in that case to search all persons present. The Court emphasized:

There is no reason to suppose that, when the search warrant was issued on March 1, 1976, the authorities had probable cause to believe that any person found on the premises of the Aurora Tap Tavern, aside from "Greg," would be violating the law. The search warrant complaint did not allege that the bar was frequented by persons illegally purchasing drugs. It did not state that the informant had ever seen a patron of the tavern purchase drugs from "Greg" or from any other person. Nowhere, in fact, did the complaint even mention the patrons of the Aurora Tap Tavern.

*Id.* at 90, 100 S.Ct. at 341–42 (footnote omitted).

944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976), the Massachusetts Supreme Court applied similar reasoning to uphold a warrant commanding the police to search an apartment and the person of one Jane Doe and any person present. *Id.*, 348 N.E.2d at 102. The court emphasized that an affidavit in support of a warrant seeking to authorize a search of any person present must be strictly scrutinized. The court elucidated three factors it deemed of particular relevance in reviewing the affidavits:

> [1] the premises or area to be searched are small, confined and private [as opposed to a public or quasi-public place where casual presence of persons for myriad of noncriminal reasons is to be expected]; [2] the nature of the criminal activity is such that the participants (in general) constantly shift or change so that it is, practically, impossible for the police to predict that any specific person or persons will be on the premises at any given time; and [3] the items specifically described in the warrant as the target of the search are of a size or kind which renders them easily and likely to be concealed on the person.

*Id.*, 348 N.E.2d at 107 (footnote omitted).

The court in *Smith* concluded that the affidavit supporting the search warrant at issue in that case provided "probable cause to believe that any person present on the premises described in the search warrant was involved in illegal trafficking in heroin." *Id.* at 103. The affidavit relied upon information received from an informant who had been inside the apartment named in the warrant and had seen, on two occasions, the person named in the warrant selling heroin to other persons present in the apartment. *Id.* at 106. The affidavit also indicated that police surveillance of the apartment had revealed persons known to traffic in heroin enter and leave the apartment. *Id.*

Several subsequent drug trafficking cases have upheld search warrants upon facts establishing a sufficient nexus between the criminal activity, the place of the activity, and the persons at the place.

In *Commonwealth v. Heidelberg*, 369 Pa.Super. 398, 535 A.2d 611 (1987), the court upheld a search warrant authorizing the search of all persons present at a home in which a confidential and reliable informant had, immediately preceding the issuance of the warrant, observed the owner selling cocaine to other persons at the house. The informant had also observed large quantities of cocaine in the house available for sale. Additional informants also corroborated that drugs were being sold from the house. *Id.*, 535 A.2d at 615.

In *State ex rel. L.Q.*, 236 N.J.Super. 464, 566 A.2d 223 (1989), *cert. denied*, 122 N.J. 121, 584 A.2d 199 (1990), the court upheld an all persons present warrant supported by the report of a reliable source that ongoing cocaine sales were taking place at the specified location; police surveillance that revealed numerous persons entering the premises, staying for short periods of time, and then leaving the house; and the observation of a lookout person to warn the occupants of police activity in the neighborhood. *Id.*, 566 A.2d at 226.

Finally, in *People v. Johnson*, 805 P.2d 1156 (Colo.Ct.App.1990), the court upheld an all persons present warrant obtained on the strength of tips from at least nine confidential sources that crack cocaine was being sold from the residence; police surveillance and observation of extensive walk-in and drive-in traffic at the location; and several undercover purchases of crack cocaine from the residence. *Id.* at 1158, 1161; *accord State v. Hinkel*, 365 N.W.2d 774, 776 (Minn.1985); *Morton v. Commonwealth*, 16 Va.App. 946, 434 S.E.2d 890, 892–93 (1993).

In the present case, the officers' authority to search defendant arose out of the search warrant's direction to search "[t]he downstairs apartment and the person of all individuals present at 479 South 100 East." In light of the foregoing, the precise issue before us is whether, based on the affidavit upon which the search warrant issued, the authorities had probable cause to believe that any person found at the basement apartment would be involved in narcotics trafficking.[2]

The affidavit upon which the search warrant issued provides, in relevant part:

**2.** In its ruling on defendant's motion to suppress, the trial court found that defendant was " 'pres-

4. After her arrest I interviewed Anderson further. She stated that she had stolen the drugs several hours before ... from Rick Close's tool box and that he had additional quantities of methamphetamine in bindles, ready for sale.... She stated that Close lives in a house at 479 South 100 East in the basement apartment which is entered in the rear. She stated that Close has been supplying her with amphetamine and that she has been smoking meth with Close today. Anderson stated that Close was living with Melissa Seamster and John Walker.

. . . .

6. Anderson has a substantial criminal history including longtime involvement with controlled substances. Her history includes possession of amphetamines, prescription fraud, and uttering forged prescriptions. NET officers have purchased drugs from Anderson and have arrested Anderson in possession of controlled substances on other occasions.

7. Officers have verified from personal observation that Rick Close resides at 479 South 100 East, Pleasant Grove. The building is a white frame building containing two apartments. One is on the main or ground level and the other is a basement apartment entered from the rear on the east side.

8. Rick Close has a substantial history of involvement with controlled substances. Officers have received tips from at least three separate sources that Close has been selling methamphetamine within the past three weeks. Officers recently searched the vehicle of Close and found drug paraphernalia. There are presently two active warrants for the arrest of Rick Close from the Orem Department of the Fourth Circuit Court with bail in the amount of $470 and the Justice Court for Pleasant Grove City with bail in the amount of $2,000, cash only.

. . . .

12. NET officers have been receiving tips regarding this residence from numerous sources during the past year. The information consistently indicates that controlled substances are being sold from that location. Officers have conducted surveillance at various times during the past six months and have arrested people residing in the building and found drug paraphernalia and controlled substances including methamphetamine. Officers observed a purchase of narcotics from the house by Darcy McDonald on 6–30–93. McDonald was subsequently arrested and charged with a narcotics related offense.

13. It is my experience that persons who deal in small bindles of methamphetamine will have, in their possession or at their residence, narcotics and other evidence of trafficking including but not limited to cash, weapons, baggies, scales, buy-owe sheets and paraphernalia for the use, storage, sale or preparation of narcotics. Such persons will typically sell what they have as quickly as they can until they are out of inventory at which time they will attempt to "re-up" or purchase a large quantity to be divided into smaller bindles for sale.

. . . .

15. It is also my experience that when drugs are being used and sold in a residence occupied by several adults, all of whom have criminal histories and experience with narcotics[,] that all persons on the premises will likely have relevant evidence on their persons or in their possession. Moreover, small bindles of drugs as expected in this matter can be readily hidden on a person or destroyed once the intent to search is revealed.

We conclude that the affidavit in this case establishes probable cause to search all persons present at the basement apartment. We therefore affirm the trial court's denial of defendant's motion to suppress and affirm his conviction.

ORME, P.J., and BENCH, J., concur.

ent' at the apartment." Because defendant has not properly challenged that finding on appeal, we accept as fact that defendant was present at the basement apartment for purposes of our analysis.