**STATE of Utah, Plaintiff and Appellee,**

v.

**Shane DOYLE, Defendant and Appellant.**

No. 950383–CA.

Court of Appeals of Utah.

May 23, 1996.

Margaret P. Lindsay and Michael Jewell, Utah County Public Defender Association, Provo, for Appellant.

Jan Graham, Attorney General, Kenneth A. Bronston, Assistant Attorney General, Criminal Appeals Division, Salt Lake City, for Appellee.

Before ORME, BENCH, and GREENWOOD, JJ.

GREENWOOD, Judge:

Shane Doyle appeals the trial court's refusal to suppress evidence obtained during the execution of an "all persons present" search warrant, contending that the warrant was unconstitutional both as issued and as executed. We affirm.

## BACKGROUND

On November 8, 1994, the Provo City Police obtained a warrant authorizing them to search the mobile home trailer of Steven and Angela Hundley, located at 255 North 1600 West, number 121, in Provo, Utah. This warrant also authorized the search of "any outbuildings, curtilage, vehicles and *the person of any individuals present* at the time of the execution of this warrant." (emphasis added). The affidavit in support of the warrant stated the search was appropriate based upon the following information:

(1) a tip from an anonymous caller stating that both Steven and Angela Hundley were using and selling cocaine and that Steven Hundley was "dealing heavily" from his place of employment;

(2) corroboration by a reliable police informant that Steven Hundley was dealing cocaine, and

(3) independent corroboration by the Provo Police through a search of the Hundleys' trash receptacle which yielded both drug paraphernalia coated with trace amounts of drug residue and items such as baggies and marijuana debris which potentially indicated the existence of a retail drug sales operation.

On November 11, 1994, at approximately 5:00 p.m., officers of the Provo Police Department's Narcotics Enforcement Team executed the warrant. When the officers arrived at the trailer, the only persons present were Steven and Angela Hundley and a child. Upon searching the trailer, the police found evidence incriminating both the Hundleys and placed them under arrest. The child was taken into protective custody.

Forty to seventy-five minutes after the police had arrived and after the Hundleys had been arrested and both they and the child has been transported from the scene, a white Ford Escort, driven by Teri Olsen with Doyle as passenger, drove up and parked near the Hundleys' trailer. Doyle exited the car and entered the trailer. The officers searched Doyle, found drug paraphernalia on his person, and placed him under arrest. The officers then proceeded to search Olsen's car and found three baggies containing methamphetamines which, upon interrogation, Doyle admitted belonged to him.

Pursuant to a plea agreement, Doyle pleaded no contest to a charge of possession of methamphetamine in a drug-free zone, a second degree felony, conditional upon his right to appeal the trial court's denial of his motion to suppress. *See generally State v. Sery*, 758 P.2d 935, 937–40 (Utah App.1988).

## ISSUES ON APPEAL

(1) Was there probable cause to issue a warrant authorizing the search of "all persons present" at the Hundleys' trailer?

(2) Did the search of Doyle exceed the scope of the warrant?

## STANDARDS OF REVIEW

We "accord great deference to the magistrate's decision" regarding probable cause. *Salt Lake City v. Trujillo,* 854 P.2d 603, 606 (Utah App.1993). We will invalidate a search pursuant to a warrant "only if the magistrate, given the totality of the circumstances, lacked a 'substantial basis' for determining that probable cause existed." *Id.* (quoting *State v. Thurman,* 846 P.2d 1256, 1260 (Utah 1993)).

## ANALYSIS

### Constitutionality of the "All Persons Present" Warrant

Doyle urges us to conclude that warrants authorizing the search of "all persons present" at a particular location are facially unconstitutional because they violate the particularity requirement of both the United States and Utah Constitutions. *See* U.S. Const. amend. IV; Utah Const. art. I, § 14.[1] However, during the pendency of this appeal, this court issued *State v. Covington,* 904 P.2d 209 (Utah App.1995). In *Covington,* this court determined that a warrant authorizing the search of "all persons present" does not violate the Fourth Amendment if it is based upon "probable cause to believe that any person found [at the location in question] would be involved in narcotics trafficking." *Id.* at 212. Thus, it is no longer an open question whether "all persons" warrants are categorically valid; the only remaining questions are whether this particular warrant was supported by sufficient probable cause and whether it was valid as executed.

### Probable Cause

In *Covington,* this court referred to what has come to be known as the "nexus"

requirement for the issuance of an "all persons present" search warrant. *State v. Covington,* 904 P.2d 209, 211 (Utah App.1995). The nexus test derives from the opinion of Chief Justice Weintraub of the New Jersey Supreme Court in *State v. De Simone,* 60 N.J. 319, 288 A.2d 849 (1972). In *De Simone,* the court found that warrants authorizing the search of "all persons present" pass constitutional muster if they are supported by probable cause to believe that anyone present at the location will likely be involved in the suspected criminal activity. The court reasoned as follows:

> [W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by *physical nexus* to the ongoing criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, *presence becomes the descriptive fact satisfying the aim of the Fourth Amendment.* The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny government a needed power to deal with crime, without advancing the interest the Amendment was meant to serve.

*Id.* 288 A.2d at 850–51 (emphasis added). The nexus requirement has been employed by courts with varying results. *E.g., People v. Johnson,* 805 P.2d 1156, 1159–60 (Colo.Ct. App.1990); *Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101, 105–06 (1976), *cert. denied sub nom., Smith v. Massachusetts,* 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976); *State v. Anderson,* 415 N.W.2d 57, 60–61 (Minn.Ct.App.1987); *State v. Hink-*

---

1. Doyle urges us to adopt a reading of our state constitution which is more expansive than the analysis employed under the federal constitution. The "proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not, as typically happens ... for the first time on

appeal." *State v. Bobo,* 803 P.2d 1268, 1273 (Utah App.1990). Because the trial court was not afforded a meaningful opportunity to address the state constitutional issue, we decline to conduct a separate state constitutional analysis on appeal.

*el,* 353 N.W.2d 617, 620–21 (Minn.Ct.App. 1984), *rev'd on other grounds,* 365 N.W.2d 774 (Minn.1985); *State v. Sims,* 75 N.J. 337, 382 A.2d 638, 643–44 (1978); *State in Interest of L.Q.,* 236 N.J.Super. 464, 566 A.2d 223, 226 (1989), *cert. denied,* 122 N.J. 121, 584 A.2d 199 (1990); *Covington,* 904 P.2d at 211–13; *Morton v. Commonwealth,* 16 Va.App. 946, 434 S.E.2d 890, 892–93 (1993); *State v. Carter,* 79 Wash.App. 154, 901 P.2d 335, 339 (1995); *see also* 2 Wayne R. LaFave, *Search & Seizure* § 4.5(e), 546 (3d ed. 1996) ("Unquestionably, the *De Simone* rationale is correct.").

The *Covington* opinion also refers to three relevant factors identified by the Massachusetts Supreme Court in *Smith,* 348 N.E.2d at 107, as appropriate in determining whether probable cause exists for an "all persons" warrant. *Covington,* 904 P.2d at 212. The *Smith* court stated:

[S]everal facts are of particular relevance: the premises or area to be searched are small, confined and private; the nature of the criminal activity is such that the participants (in general) constantly shift or change so that it is, practically, impossible for the police to predict that any specific person or persons will be on the premises at any given time; and the items specifically described in the warrant as the target of the search are of a size or kind which renders them easily and likely to be concealed on the person.

*Smith,* 348 N.E.2d at 107 (footnote omitted).

Each of these factors is present in this case. The Hundleys' trailer is a "small, confined and private" dwelling. This factor is important because an "all persons" search of such a dwelling is far less likely to entrap the innocent than one of a public or semi-public establishment. *See, e.g., Ybarra v. Illinois,* 444 U.S. 85, 97, 100 S.Ct. 338, 345, 62 L.Ed.2d 238 (1979) (holding warrant to search bar did not allow search of patron). With respect to the second and third factors, the nature of drug dealing is such that it often creates a constant stream of unknown persons, while the subject of the search, drugs, are usually easily hidden or disposed. Accordingly, a small, private residence, such as the Hundley trailer, may be a permissible locale for an "all persons" search warrant, when drug dealing is alleged, if the requisite degree of probable cause can be shown.

Having determined that the situation in question potentially warranted the issuance of an "all persons" warrant, we must now examine the affidavit submitted in support of the "all persons" warrant to determine if it provided the requisite degree of probable cause. We believe the affidavit in this case supports a reasonable inference that the Hundleys were conducting a retail drug sales operation from their residence such as would justify the issuance of a warrant to search all persons who might be present therein. The affidavit was based upon three primary factors: First, an anonymous tip that the Hundleys were using and selling drugs and that Steven Hundley was "dealing heavily" from his workplace; second, a reliable police informant's confirmation that Steven Hundley was selling drugs; and third, the results of the police search of the Hundleys' trash receptacle.

While the anonymous tip, in and of itself, may not provide a sufficient basis for the issuance of the warrant, the police took substantial steps to corroborate it through a second confidential informant and through their own independent investigation. The confidential informant's corroboration was deemed to be reliable because this informant had provided the police with reliable information in the past. More importantly, the police search of the Hundleys' trash uncovered evidence which strongly supported an inference that drugs were being sold from the Hundleys' trailer. In the Hundleys' trash, the police found drug paraphernalia, trace amounts of methamphetamines, marijuana debris, butane fuel canisters, syringes and baggies.

This evidence was interpreted for the magistrate by the affiant, Officer Jerry Harper. Officer Harper expressed his belief, based upon his substantial experience in drug enforcement, that this evidence established the likelihood that controlled substances would be found in the Hundley residence. He also stated his belief that a no-knock "all persons" warrant was necessary due to the fact that,

by their very nature, drugs are easily susceptible to being hidden or destroyed.

Having reviewed the information in the affidavit, we conclude that the magistrate had a "substantial basis" for finding that there was probable cause to issue an "all persons" warrant for the Hundleys' trailer. The information contained in the affidavit supports a reasonable inference of an on-going criminal enterprise operated out of the Hundleys' trailer. Such an inference provides the requisite nexus to criminal activity to justify the issuance of an "all persons present" search warrant.

### Execution of the Warrant

■ Doyle next asserts that even if we find that the warrant was based upon probable cause, it did not permit a search of his person because the warrant had been executed before he arrived. Doyle argues that even if the warrant did permit a search of persons present or arriving shortly after the police began their search, it did not permit a search of Doyle because when he arrived, the police had completed their search and thus were no longer executing the warrant.

We begin by examining the language of the warrant. The warrant authorized the search of "any individuals present *at the time of the execution of the warrant.*" This language is susceptible to two different interpretations. The time of execution could be limited to the exact time the police serve the warrant, or it could be the entire time the police are legitimately on the premises under the authority of the warrant. We believe the latter is a more reasonable interpretation.

■ The clear intent behind a warrant to search "all persons present" is to allow a search of any persons, who by their mere presence, are potentially implicated in the criminal activity in question. The nexus between a person's presence and his or her relation to criminal activity does not change simply because of the passage of a short period of time. Therefore, an "all persons present" warrant applies equally to all persons who are present within a reasonable time after the execution of the warrant, including those who arrive on the premises while the police are still legitimately present. Furthermore, we believe the nexus requirement already provides sufficient protection against police overreaching. *See Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560, 562–63 (1989). Accordingly, we hold that the warrant authorized the search of Doyle despite the fact that he arrived on the scene during the execution of the search warrant. *See id.* 554 A.2d at 562 (" 'We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.' ") (quoting *Commonwealth v. Reese,* 520 Pa. 29, 549 A.2d 909, 911 (1988)).

■ The last argument we address is whether the police had completed their execution of the warrant when Doyle arrived. Although the Hundleys and the child had already been transported, that does not necessarily mean the officers were no longer entitled to remain on the premises for a reasonable period in order to complete their investigation. Apparently, the officers were completing the gathering of evidence when Doyle arrived at the Hundley trailer. Doyle has not asserted that they were no longer authorized to be on the premises nor that they were intentionally loitering in hopes of snaring other suspects. Accordingly, we concur in the trial court's analysis of this issue and hold that a warrant is still being executed so long as the police legitimately remain on the premises to complete a search and gathering of evidence as authorized by that warrant.

### CONCLUSION

*Covington* establishes that warrants to search "all persons present" at a given location are permissible if supported by probable cause to believe that anyone present is likely to be involved in the criminal activity in question. Because the affidavit at issue in this case provided the magistrate with sufficient evidence to infer the requisite degree of probable cause, the warrant was valid and authorized a search of any person who was present at the Hundleys' trailer. Furthermore, despite the fact that Doyle arrived after the police had begun their search, he was still a "person present" for purposes of

the warrant's language. Finally, because the police were still in the process of executing the warrant when Doyle arrived, they were justified in searching his person. For the foregoing reasons, we affirm the trial court's refusal to suppress the evidence.

BENCH, J., concurs.

ORME, Presiding Judge (dissenting):

I dissent. While the affidavit established probable cause to search the Hundleys' residence, it did not establish the probability that other persons coming to the residence were most likely intending to engage in drug transactions. Quite the contrary, the affidavit identified Steve Hundley's place of employment, rather than the residence, as the hotbed of sale activity. While I take no issue with the general law outlined by the majority, I fail to see how the affidavit established, in the words of the main opinion, "probable cause to believe that anyone present at the location will likely be involved in the suspected criminal activity." While I concede the three factors delineated in *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101, 107 (1976), seem to be present in this case, as duly noted by the majority, this is merely a threshold question and not dispositive of whether the "all persons present" warrant was adequately supported by probable cause.

In reviewing the grant of an "all persons present" warrant, this court must carefully scrutinize the underlying affidavit. *State v. Covington*, 904 P.2d 209, 212 (Utah App. 1995). In *Covington*, this court cited to cases in which "all persons present" searches were upheld. *Id.* In each of these cases, the facts had to establish a sufficient nexus between the criminal activity, the place of the activity, and the persons at the place. *Id.* The facts that helped establish this nexus are, for example, an informant observing large quantities of cocaine in the house, drugs being sold from the house, numerous persons entering the premises and staying for short periods of time, a lookout present to warn occupants of police activity, undercover purchases of crack cocaine from the residence, and extensive walk-in and drive-in traffic at the location. *Id.* We have no such information here. Given the affidavit before us, it is just as likely that the only visitors to the Hundley residence were friends, relatives, pizza delivery-men, opinion surveyors, bill collectors, Jehovah's Witnesses, and persons looking for lost pets as it is that most visitors were looking to buy drugs. A fair reading of the affidavit is that those looking to buy drugs from the Hundleys called on Steven at work rather than dropping by the residence.

In this case, there is nothing in the affidavit quoted by the majority to establish the requisite factual nexus. The only premises from which drug sales took place, according to the explicit language of the affidavit, was Steven Hundley's place of employment. There was no indication that numerous persons dropped by for short periods of time or even that an undercover drug purchase was made from the home. Without more evidence of drug dealing from the home, there is nothing to establish a link between the home, the alleged drug dealing, and any person, other than the Hundleys, who may have been present. Therefore, insofar as directed at anyone else who might turn up at the residence, the warrant was not supported by probable cause, and the search of defendant was unlawful.

I would reverse the conviction and remand for a new trial.