STATE of Utah, Plaintiff and Appellee,

v.

Donald BLEVINS, Defendant and Appellant.

No. 971419–CA.

Court of Appeals of Utah.

Oct. 29, 1998.

Margaret P. Lindsay, Aldrich Nelson Weight & Esplin, Provo, for Defendant and Appellant.

Jan Graham, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, GREENWOOD, and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant Donald Blevins appeals his conviction for possession of methamphetamine, a controlled substance, in a drug-free zone, a second degree felony under Utah Code Ann. § 58–37–9(2)(a)(i) (Supp.1997), asserting the trial court erred in denying his Motion to Suppress. We affirm.

## FACTS

"We recite the facts in a light most favorable to the lower court's findings when reviewing its decision denying defendant's motion to suppress." *State v. Montoya*, 937 P.2d 145, 147 (Utah Ct.App.1997) (citing *State v. Anderson*, 910 P.2d 1229, 1230 (Utah 1996)).

On September 4, 1997, law enforcement officers from the Utah County Narcotics Enforcement Team (NET) executed a search warrant on a Provo City private residence (the residence) in search of controlled substances. The search warrant's language permitted the officers to search the "[residence], outbuildings and curtilage, persons of individuals present or arriving to this location and vehicles related to individuals present or arriving to the location."

While police were executing the warrant, Blevins drove up to the residence and parked his vehicle nearby on a public street. As Blevins exited his vehicle, NET officers approached him, and upon questioning he told the officers he was there to visit an occupant

of the residence. The officers cursorily searched Blevins for weapons, handcuffed him, and led him into the residence where they performed a thorough search for both weapons and controlled substances; neither was found on his person. The NET officers also searched Blevins' vehicle where they found a syringe and a baggie of methamphetamine.

Blevins entered a conditional guilty plea to the charge of possession of a controlled substance in a drug-free zone. He then filed a Motion to Suppress the methamphetamine and paraphernalia found in his vehicle. The trial judge denied Blevins' motion and he now appeals.

## ANALYSIS

Blevins asserts the "arriving at" warrant, which allowed police to search the vehicle he drove to the residence, was an impermissible "general warrant" not supported by probable cause.

 "We 'accord great deference to the magistrate's decision' regarding probable cause." *State v. Doyle*, 918 P.2d 141, 143 (Utah Ct.App.), *cert. denied*, 925 P.2d 963 (Utah 1996) (quoting *Salt Lake City v. Trujillo*, 854 P.2d 603, 606 (Utah Ct.App.1993)). "The standard of probable cause is described as being 'only the probability, and not a prima facie showing, of criminal activity.'" *State v. Brown*, 798 P.2d 284, 285 (Utah Ct.App.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983)) (additional citations omitted). Further,

Utah appellate courts have adopted the totality of the circumstances test ... for determining whether there is probable cause to support the issuance of a search warrant.... Accordingly, the magistrate must consider all the circumstances set forth in the affidavit and make a "practical, common-sense decision whether ... there is a fair probability" that criminal evidence will be found in the described place.

*Id.* at 285–86 (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332) (omission in original) (additional citations omitted). However, in *State v. Covington*, 904 P.2d 209, 212 (Utah Ct.

App.1995), we approved the practice of strictly scrutinizing an affidavit supporting an "all persons warrant."

In *Covington*, this court first dealt with an "all persons warrant," and framed the issue as follows:

The question remains whether a warrant that authorizes the search of unnamed persons present at a location is lawful if it is supported by probable cause to believe that all persons in the place at the time of the search will be involved in the criminal activity upon which the warrant issued....

[And w]hether, based on the affidavit upon which the search warrant issued, the authorities had probable cause to believe that any person found at the basement apartment would be involved in narcotics trafficking.

*Id.* at 211–12. In *Covington* we reviewed both federal and state caselaw and agreed with the majority view that approves of "all persons warrants" in limited situations, and consequently upheld a warrant allowing the search of all persons present at a basement apartment. *See id.* at 211–13. In so holding, we agreed with the New Jersey Supreme Court that there was sufficient physical nexus to overcome the vice of a general warrant. *See id.* at 211 (citing *State v. DeSimone*, 60 N.J. 319, 288 A.2d 849, 850 (N.J.1972)). The *DeSimone* court stated:

[W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by *physical nexus* to the ongoing criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated.

*Id.* at 850 (emphasis added). We also approved of the Massachusetts Supreme Judicial Court's three-factor approach in eval-

uating the validity of these "all persons warrants":

> ■ the premises or area to be searched are small, confined and private; [2] the nature of the criminal activity is such that the participants (in general) constantly shift or change so that it is, practically, impossible for the police to predict that any specific person or persons will be on the premises at any given time; and [3] the items specifically described in the warrant as the target of the search are of a size or kind which renders them easily and likely to be concealed on the person.

*Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101, 107 (Mass.), *cert. denied,* 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976) (footnote omitted).

Subsequently, in *State v. Doyle,* 918 P.2d 141 (Utah Ct.App.), *cert. denied,* 925 P.2d 963 (Utah 1996), we held that an affidavit sufficiently established probable cause to issue an "all persons warrant" to search all those present in a trailer home whose resident was suspected of "conducting a retail drug sales operation from [the] residence." *Id.* at 144. *Doyle* further held that "an 'all persons warrant' applies equally to all persons who are present within a reasonable time after the execution of the warrant, *including those who arrive on the premises while the police are still legitimately present." Id.* at 145 (emphasis added).

■ Defendant argues that this case pushes the scope of an "arriving persons warrant" too far by extending the search to the arriving persons' vehicles. We disagree. In *United States v. Alva,* 885 F.2d 250, 252–53 (5th Cir.1989), the Fifth Circuit upheld a search for cocaine under a warrant that allowed a search of the house and all "motor vehicles found on the premises" under facts similar to our case. While the search of the house was underway, Alva arrived in his pickup truck and parked about fifteen feet from the house and entered. *See id.* at 251. While officers detained Alva in the house, other officers left the house and searched the truck where they found a weapon. *See id.* Based upon the weapon's discovery, Alva was later charged with being a felon in possession of a firearm. *See id.* Even though the

warrant did not expressly include all vehicles arriving to the residence as ours does, the court upheld the search of the truck as not exceeding the warrant's scope nor the proscription against general warrants. *See id.* at 253.

In *State ex rel. L.Q.,* 236 N.J.Super. 464, 566 A.2d 223, 226 (N.J.Super.Ct.App.Div.1989), *cert. denied,* 122 N.J. 121, 584 A.2d 199 (N.J.1990), the New Jersey Superior Court in an "arriving persons warrant" case explained the rationale allowing such a warrant, a rationale we think equally applies to "arriving vehicles" carrying these persons.

> The evidence was sufficient to create a well-grounded suspicion or belief that numerous sales of CDS were being conducted in the premises. Although the affidavit did not exclude the possibility of other activities on the premises, the description of the activity actually observed provided a firm foundation for the suspicion or belief that any person in the private premises was involved in the overt unlawful activity of sale and possession of cocaine. *Such a suspicion or belief is not limited to persons already there when the police arrive, but reasonably extends to a person who enters the premises during the search. Such a person is probably a supplier, a subdealer or a customer. The criminality of the supplier and subdealer are obvious. Even the customer could already be carrying CDS or paraphernalia. At the least, there is probable cause to believe that the customer is attempting to violate the laws prohibiting possession and use of controlled dangerous substances.*

*Id.* at 226 (emphasis added) (citations omitted). If anything, it is more likely that evidence of criminal activity will be found in the vehicle bringing the person to the residence, than it is likely that such evidence will be found on the person himself.

We conclude the extension of the search to the vehicles of persons arriving at a residence does not exceed *Covington's* nexus requirement, and thus does not violate the general warrant provision. In this case, the officers saw Blevins as he arrived at the street in front of the residence. The officers

approached and questioned Blevins as to his destination as he exited the vehicle. Blevins told the officers that he was there to see an individual living at the residence then being searched for drugs, after which Blevins himself was searched and led into the house. Later, the officers searched Blevins' vehicle and located the methamphetamine and accompanying paraphernalia.

The fact that Blevins parked his vehicle on the street, rather than within the curtilage of the suspected house is not determinative.[1] Because the NET officers determined Blevins to be "arriving to" the residence, the particularity and nexus requirements were met. It was clear that the vehicle being searched belonged to Blevins, not any other person, and that he had driven it to the residence with the intention of visiting its occupants.

█ We also conclude that in this case there was probable cause to support an "all persons warrant." The affidavit supporting the issuance of the warrant specifically discussed the likelihood of vehicles "arriving to" the residence containing controlled substances or paraphernalia. The magistrate issued a search warrant directing the officers to

> conduct a search of the residence, person's [sic] of individuals at or *arriving to the residence along with the vehicles associated with the person's [sic] at or arriving to the residence,* outbuildings and curtilage, persons of individuals present or arriving to this location *and vehicles related to individuals present or arriving to the [residence].*

(Emphasis added). NET officer Richard Case executed an affidavit, which stated in part:

> 2. That within the past 48 hours myself and other officers from N.E.T. made a controlled buy of marijuana using a confidential informant. That this confidential

informant purchased over two ounces of marijuana from the residence located at approximately 1148 west 100 north Provo, Utah.

> . . . .

> 4. That the confidential informant was taken to the residence by an unwitting informant to purchase the marijuana. That officers from N.E.T. followed the confidential informant and unwitting informant to the residence [described above].

> . . . .

> 6. That the unwitting informant stated that a female, living in the west apartment of the duplex at the above mentioned locations, was selling large amounts of marijuana, but would only sell amounts in ounce or less bags. The unwitting informant stated that the female would sell ounce bags all day and all night long.

> 7. That while I was monitoring the controlled buy, I observed numerous persons arrive at the residence, stay a short period of time then leave.

> . . . .

> 9. That the amounts of marijuana being sought are large amounts for distribution and small amounts for personal use, and sale. Such amounts are typically packaged in one ounce baggies or less and can be quickly and easily hidden.

> 10. It is my experience that persons I have encountered with the unlawful use/distribution of marijuana and paraphernalia, *often keep these items in outbuildings and vehicles.* Failure to search the curtilage of the residence, and the vehicles located or related to the individuals at this location at the time of the execution of this warrant, will likely result in officers missing important evidence.

> 11. That from your affiant's training and experience, persons arriving at the residence to purchase marijuana and related paraphernalia *will often keep these items*

---

1. Defendant directs us to two cases, *Freeman v. State,* 681 So.2d 242 (Ala.Crim.App.1994), and *Henderson v. State,* 685 So.2d 970 (Fla.Dist.Ct. App.1996), for the proposition that a vehicle parked on a public street in front of or behind a residence is not within the curtilage or residence and thus cannot be searched. Defendant misapprehends the nature of the physical nexus in the

case at bar. Here, the nexus is not that the vehicle is parked on the premises, but that the vehicle has brought a person who admits he is going to the residence where the drugs are allegedly being sold. Thus the vehicle's location in relation to the residence is not critical because the officers saw defendant exit his vehicle and determined his destination.

*on their person or in their vehicles.* Failure to search the person and vehicles of individuals arriving to the residence during the execution of the warrant will result in officers missing valuable evidence.

(Emphasis added).

The dissent argues that the affidavit failed to establish the nexus between the criminal activity involved—the sale of drugs from a house—and all persons and their vehicles arriving to the residence. We disagree. First, the dissent requires too high a standard for the execution of a search warrant claiming that "every person within the orbit of the search must possess the items sought by the warrant," citing a Kansas case. The law in Utah is rather whether "there is a fair probability that criminal evidence will be found in the described place." *State v. Brown,* 798 P.2d 284, 285 (Utah Ct.App.1990) (citations omitted). We conclude that the affidavit sufficiently established a "fair probability" that persons arriving at the residence would have evidence of criminal activity in their vehicles. Further, our holding is consistent with our prior cases dealing with "all persons warrants." In our most recent case, *State v. Doyle,* 918 P.2d at 145, we held that an affidavit established the requisite nexus to search "all persons arriving" at the residence without specifically referring to arriving persons, but where the warrant focused only on "any individuals present."

Based upon the affidavit here, we conclude probable cause existed to search the vehicles of "persons arriving at" the residence. The magistrate could easily have found, considering all the circumstances, that it was more likely than not that controlled substances or paraphernalia would be found on the person of arriving individuals or in the vehicles bringing them to the residence. Thus, we conclude that there was probable cause for the search warrant as issued, and that it was not an impermissible general warrant.

GREENWOOD, J., concurs

ORME, Judge (dissenting):

I dissent. Although " 'the standard of probable cause must be particularized to every person or place to be searched,' " *State v.*

*Covington,* 904 P.2d 209, 211 (Utah Ct.App. 1995) (quoting *State v. Ayala,* 762 P.2d 1107, 1111 (Utah Ct.App.1988)), the affidavit supporting the search warrant in this case failed to establish the requisite nexus between the criminal activity in question and all persons—and their vehicles—arriving at the premises.

"[T]he forefathers, · after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." *United States v. Di Re,* 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210 (1948). Thus, in applying the Fourth Amendment's specificity requirement, "the line between what is and what is not sufficiently particular must be drawn with a view to accomplishment of the constitutional purpose" of "minimizing the danger of unwarranted invasion of privacy." *State v. Gallegos,* 712 P.2d 207, 209 (Utah 1985). Accordingly, in determining whether "all persons" warrants comport with the specificity requirement, we must closely examine "the evidence supporting the probable cause for their issuance." *Covington,* 904 P.2d at 211.

More particularly, we must "look closely at the facts known to the judge at the time the warrant was issued" to determine whether these facts "justify a belief that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the items sought by the warrant." *State v. Horn,* 15 Kan.App.2d 365, 808 P.2d 438, 439 (Kan.Ct.App.1991). *See also Marks v. Clarke,* 102 F.3d 1012, 1029 (9th Cir.1996) ("[A] warrant to search 'all persons present' for evidence of a crime may only be obtained when there is reason to believe that those present will be participants in the suspected criminal activity."), *cert. denied, sub nom. Allen v. Gypsy Church of the Northwest,* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5(e) (1996) ("[T]he question is whether ... the information supplied the magistrate supports the conclusion

that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person."). In determining whether such a belief is justified, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). Instead,

> [w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Id. See also Di Re,* 332 U.S. at 587, 593–95, 68 S.Ct. at 225, 228–29 (rejecting claim that mere proximity to unlawful activity provides probable cause necessary for search).[1]

Because *Ybarra* prohibits equating nearness with probable cause, to establish the nexus necessary to satisfy the Fourth Amendment affidavits supporting an "all persons" search warrant must particularize probable cause with respect to every person, and, if necessary, their vehicles, within the orbit of the search.

For example, in *State v. Covington,* 904 P.2d 209 (Utah Ct.App.1995), we concluded there was a sufficient nexus between all persons present and the criminal activity under investigation based on an affidavit showing that all present in a basement apartment, occupied by several adults with criminal histories and narcotics experience, were likely to have evidence relevant to the investigation on their person.[2] *See id.* at 213. Likewise, in *State v. De Simone,* 60 N.J. 319, 288 A.2d 849 (N.J.1972), the court approved of the particular "all persons" warrant because there was "good reason to suspect or believe that anyone present at the anticipated scene will probably be a *participant.*" *Id.* at 850 (emphasis added).

In this case, the majority concludes there was probable cause to search the vehicles of persons arriving at the house based on officer Richard Case's affidavit conclusorily

**1.** For instance, in *People v. Jackson,* 180 Mich. App. 339, 446 N.W.2d 891 (Mich.Ct.App.1989) (per curiam), the court examined the constitutionality of a search warrant authorizing the search of " 'the persons of other individuals on or coming into the premises during the execution of the search warrant.' " *Id.* at 892. The warrant was supported by a police officer's affidavit stating that "[i]t has been my personal experience that people on the premises during the execution of a search warrant ... often will attempt to hide the very items which the Search Warrant provides may be seized." *Id.* In reversing the trial court's refusal to suppress evidence obtained from a person arriving at the premises during the search, the court found the *Ybarra* reasoning controlling and ruled:

> While warrant language expressly permitting the search of unnamed persons may not be constitutionally infirm in every instance, the affidavit language cited here does not even go so far as to particularize the nature of the illegal conduct allegedly committed by the people who visit or reside at the specific address in question. Plainly, at any particular time even a private residence may have on its premises any combination of residents, invitees, licensees, or even trespassers, any number of whom may be innocent of any alleged wrongdoing and for whom no probable cause to search exists.

*Id.* at 893.

**2.** In *State v. Doyle,* 918 P.2d 141 (Utah Ct.App. 1996), so heavily relied on by the majority, the court adjudged "all persons present" during a search to include all persons who were present at any time during the search rather than just those present at the moment police arrived. *See id.* at 145. But at least the *Doyle* defendant was present in some meaningful sense, *see id.* at 142 ("Doyle exited the car and *entered the trailer* [home which was the subject of the search warrant].") (emphasis added), as opposed to the defendant in this case, who was stopped and searched as he headed to the premises and whose vehicle was searched while parked on a public street. The erosion of Fourth Amendment protections countenanced by the majority in this case is typified by the State's concession at oral argument that, so long as the police ascertained Blevins was heading to the premises identified in the search warrant, under the State's theory the Fourth Amendment would be no bar to searching him and his vehicle several blocks from the premises. Worse yet, if the officer here had stated in his affidavit that, in his experience, "persons arriving at the residence to purchase marijuana and related paraphernalia will often keep these items on their person or in their vehicles [or at their own residence]," the majority's logic would readily permit the search of Blevins's residence as well as his vehicle.

claiming that, in his experience, "persons arriving at the residence to purchase marijuana and related paraphernalia will often keep these items on their person or in their vehicles."[3] Suggesting, with no factual support whatsoever, that individuals arriving at this residence tend to keep drugs on their persons or in their vehicles hardly particularizes probable cause with respect to every person within the orbit of this search. Indeed, this unsupported assumption stands in stark contrast to the commendably specific bases upon which probable cause rested in the other portions of the affidavit.[4] The absence of such specificity regarding people and vehicles arriving at the residence demonstrates that the principle actually underlying the "all persons" component of the warrant is the very guilt-by-association inference forbidden under *Ybarra*.

Particularly troubling is the majority's casual assumption that a person coming to the premises is probably a drug "supplier, a subdealer or a customer." "Plainly, at any particular time [the residence in question] may have on its premises any combination of residents, invitees, licensees, or even trespassers, any number of whom may be innocent of any [wrongdoing alleged in the affidavit and thus] for whom no probable cause to search exists." *People v. Jackson*, 180 Mich.App. 339, 446 N.W.2d 891, 893 (Mich.Ct.App.1989) (per curiam). *See De Simone*, 288 A.2d at 851 (distinguishing a permissible "all persons" warrant from one allowing the search of a person in a building where "some innocent person could happen to call upon the occupant of such real property").

Even assuming it set forth facts establishing that all persons arriving at the premises were probably a supplier, subdealer, or customer, Officer Case's affidavit fails to explain why every arriving person and their vehicle would possess evidence within the scope of this search warrant *before* entering the residence where the marijuana and paraphernalia sought by the search warrant were to be found.[5] In simple terms, how is it possible

3. The majority, relying upon *United States v. Alva*, 885 F.2d 250 (5th Cir.1989), denies that its ruling expands the law governing warrants aimed at persons coming to a residence which is the subject of a search. This reliance, however, is misplaced. *Alva* addressed an entirely different issue than that now before this court. The *Alva* court merely interpreted whether a particular warrant, authorizing the search of "any and all vehicles found parked on the premises at 223 Burcham," encompassed the vehicle of the owner and lessor of the premises, who voluntarily drove onto the premises and then entered the residence without knocking. *Id.* at 252. The *Alva* court did not pass on the probable cause required for an affidavit supporting an "all persons" warrant. *See id.* ("It is not disputed that probable cause supported the warrant....."). Accordingly, *Alva* is inapposite.

4. Probable cause to search the premises was supported by a specific account of a recent controlled drug purchase at the residence and an informant's account of the drug-sale enterprise's hours and method of operation. By contrast, probable cause to search the person and vehicle of persons coming to the residence was based only on the officer's unsubstantiated claim that "persons arriving at the residence to purchase marijuana and related paraphernalia will often keep these items on their person or in their vehicles." The officer recounts no observation of or information concerning such persons, much less any prior occasion to search their person or vehicles so as to form an opinion about the likelihood such visitors will have marijuana and/or paraphernalia on their person. He makes a passing reference to his "training and experience," but wholly fails to explain what it is in his training and experience that supports such a conclusion. Accepting such conclusions on blind faith is not consistent with Fourth Amendment jurisprudence.

Would the majority find probable cause to search the residence if, without more, the affiant stated that, in his experience and training, marijuana was being sold at the residence? Of course not. They would want to know what facts support that conclusion. The reference to persons coming to the residence and their vehicles is on precisely the same footing: No facts set forth in the affidavit demonstrate probable cause with the requisite particularity.

5. This is not to say that such a showing is impossible. For example, regarding suppliers, if the affidavit demonstrated that, based upon the officer's observations in light of his experience and training, suppliers tended to arrive at the residence at a given time, or drive particular vehicles, and have marijuana with them to be resold in the residence, there may have been probable cause to search all persons arriving at that time and/or in the vehicles described. Regarding subdealers and customers, the affidavit might have established, for instance, that subdealers bring marijuana to the residence to compare before purchasing, or that the typical customer will obtain some marijuana, leave to sample the quality of the product, and then return with the unsmoked marijuana either to buy more (if

that persons *coming to* the residence—as opposed to all persons already at the residence or all persons leaving the residence—will have on their person or in their vehicle evidence of the criminal activity being conducted *within* the residence? [6]

The theory implicitly embraced by the majority indeed seems to be one of guilt by association: If there is probable cause to believe marijuana sales are occurring in a house, it is reasonable to believe that persons *coming to* the house are coming to buy marijuana. Such persons *obviously* do not have—at least, not yet—any of the marijuana being sold from the house and thus sought by the warrant. Nonetheless, as they are most likely coming to buy marijuana, it is fair to assume they are ne'er-do-wells. As such, there could be who-knows-what on their person or in their vehicle parked down the street: concealed weapons; illegal drugs purchased from other sources; open containers of alcohol; counterfeit money; bad checks; child pornography; stolen car stereos, etc., etc. This approach, however appealing it may be at an intuitive level, must be rejected for the simple reason that such theoretical possibilities are no substitute for the particularized showing of probable cause required

by the Fourth Amendment to the United States Constitution.

Without such a particularized showing of probable cause, an "all persons" warrant is an unconstitutional general warrant that allows the police unbridled discretion to search the person, car, or home of any person who happens by the residence being searched. Allowing searches upon such warrants expands the limited use of "all persons" warrants beyond that which the Fourth Amendment permits.

In this case, the evidence supporting the warrant's issuance failed to establish a nexus between the residence, the alleged drug dealing, and the vehicles belonging to any and all persons arriving at the residence. Consequently, the warrant was not supported by probable cause to search all arriving persons and their vehicles, and the search of defendant's vehicle violated the Fourth Amendment.

---

pleased) or to seek a refund (if dissatisfied). What facts would sufficiently tie arriving visitors to the marijuana sought in this search is entirely speculative since we have an affidavit setting forth no such facts at all.

**6.** Although it revealed incriminating evidence, the search of Blevins's vehicle revealed no evi-

dence relevant to the investigation of marijuana sales from the residence. That is, the affidavit describes the residence as a marijuana distribution center and fails to mention methamphetamine in any way, while the search of Blevins's vehicle revealed methamphetamine but no marijuana.